367 So.2d 335 (1979)
STATE of Louisiana
v.
Jack LeBLANC, Jr.
No. 62770.
Supreme Court of Louisiana.
January 29, 1979.
*336 Richard J. Bertrand, Lafayette, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Ronald D. Cox, Asst. Dist. Atty., for the State.
DIXON, Justice.[*]
Petitioner, Jack LeBlanc, Jr., was charged by bill of information with willfully and intentionally resisting arrest by officers of the Lafayette Parish sheriff's office, in violation of R.S. 14:108. The petitioner was tried before a judge ad hoc, found guilty and sentenced to pay a fine of $25 plus costs and to serve thirty days in the parish jail. The jail term was suspended and petitioner was placed on one year unsupervised probation. This court granted writs to review petitioner's two assignments of error.

Assignment of Error No. 1
After the state rested its case, the defense moved for a judgment of acquittal which was denied and after the judge ad hoc ruled against the defendant, the defense made a motion for a new trial that was denied. When defense gave notice of intention to apply for writs, the judge ad hoc stayed the sentence pending the determination of the writs and prepared a narrative account of witnesses' testimony from notes he made during the trial because there was no recording of testimony at trial.
The defense contends that the judge ad hoc erred in denying his motion for a new trial when there was no evidence to support the finding of guilty. Defense argues that a recording and transcript should be available for judicial review rather than a narrative account. Defense contends that under Art. 1, § 19 of the Louisiana Constitution of 1974 and subsequent legislative acts the entire record including recorded and transcribed testimony of all witnesses must be forwarded to the court for review unless defendant intelligently waived his constitutional right to judicial review based on the complete record. The state contends in response that defense counsel did not request recording of all proceedings pursuant to C.Cr.P. 843 which requires a motion from the court, state or defense before a recording will be made in misdemeanor cases.
*337 The defense contends that the requirement in C.Cr.P. 843 of a motion for recordation in a misdemeanor case conflicts with Art. 1, § 19 which grants the right of judicial review based on a complete record.
The right of judicial review based on a complete record of all the evidence is mandated by Art. 1, § 19 of the Louisiana Constitution of 1974 which provides:
"No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law."
However, before the adoption of the new Constitution, the Louisiana State Law Institute drafted C.Cr.P. 843 as part of a package to amend the Code of Criminal Procedure so as to eliminate provisions relating to bills of exception and instead to provide for assignment of error. C.Cr.P. 843 as amended by Acts 1974, No. 207 provided:
"On motion of the court, the state, or the defendant in misdemeanor cases in the district court in which the possible sentence may give the defendant the right to appeal, and in felony cases, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel." (Emphasis added).
A year later C.Cr.P. 843 was amended by Acts 1975, No. 118 § 1 and now provides:
"In felony cases, and on motion of the court, the state, or the defendant in misdemeanor cases tried in a district, parish, or city court, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel." (Emphasis added).
The second amendment deleted "in the district court in which the possible sentence may give the defendant the right to appeal" and added instead "tried in a district, parish, or city court."[1]
With this 1975 amendment the Louisiana State Law Institute added the Official Revision Comment as a replacement for Revision Comment to the old C.Cr.P. 843 bill of exception provisions. The new Official Revision Comment for C.Cr.P. 843 provides in part:
"(b) In misdemeanor cases in the district court in which the possible sentence may give the defendant the right to appeal, this article requires that all of the proceedings be recorded if the defendant, the state, or the court so moves. No such motion is required for recordation of the proceedings in felony cases.
The right in this article to require that all of the proceedings be recorded by the clerk or court stenographer in misdemeanor cases is related to the right to appeal. See Art. V, Section 5, Constitution of 1974. If Art. I, Section 19, Constitution of 1974 gives broader rights, the constitution will, of course, prevail." (Emphasis added).
In the present case the issue is whether the words "on motion of the court, the state, or *338 the defendant" are unconstitutionally restrictive because Art. 1, § 19 of the 1974 Louisiana Constitution gives broader rights.[2]
The basic wording of Art. 1, § 19 was first proposed at the Constitutional Convention of 1973 by Mr. Avant, who explained that certain trials were not automatically recorded and that it was possible for a person to receive up to six months in jail without having any sort of a record available for review. Most of the debate during the constitutional convention concerned the cost of implementing Mr. Avant's proposal.[3] Mr. Kelly reasoned that the cost in these matters involved the transcription and not the actual recordation of the matter; anyone could record the testimony without real expense and the use of cassette tape records in the city courts was suggested as one low cost method of recordation.
Similar to the present situation, Mr. Kelly was concerned that if the defendant or his lawyer did not ask that a complete record be made, the record would not be made.[4] Also, one delegate thought the proposed amendment might be too broad and should only apply when a person is subject to imprisonment and not when a person is subject to forfeiture of a right or property. But another delegate reminded him that C.Cr.P. 884 provides that if a defendant is sentenced to pay a fine plus court costs that defendant is still subject to imprisonment if he defaults.[5] Throughout the debate it was clear that the amendment was intended to apply to misdemeanors tried in city court as well as felonies tried in district court.[6]
*339 After passage of the amendment which became the basic wording of Art. 1, § 19, Mr. Dennis (now Justice Dennis of this court) proposed an amendment which added "the cost of transcribing the record shall be paid as provided by law." Mr. Dennis explained that he was:
". . . attempting to clarify and do what Mr. Avant and Mr. Kelly, I believe, wanted to do which was to simply make sure that a recording is made of all of the testimony and then leave it up to the legislature as to who would get that transcribed free, at the cost to the state, or who would have to pay for it himself.. . ." (Emphasis added).[7]
Mr. Dennis' amendment passed to become, together with Mr. Avant's amendment, Art. 1, § 19 of the 1974 Louisiana Constitution.
Our review of the verbatim transcripts and the clear words of Art. 1, § 19 indicate that no one in a misdemeanor case should have to make a motion before recording of the proceeding is made. Art. 1, § 19 grants the right of judicial review based on a complete record whenever a person is subject to imprisonment or forfeiture of rights or property. Therefore, the words "on motion of the court, the state, or the defendant" in C.Cr.P. 843 are an unconstitutional restriction on this constitutional right.
The state further contends that the complete record of all the evidence was not made because the defense waived that right. In the instant case, the minute entry for the day of the trial shows that prior to trial counsel for defense informed the court that he did not need a transcript of the proceedings and the judge ad hoc in his narrative of facts stated:
"The court asked the defendants and their attorneys whether or not they wished a record or a transcript of the testimony to be prepared and the defendants through their attorneys stated that they would not need a transcript of the record and therefore waived the same. Accordingly, the court made extensive notes during the trial on five legal pages." (Emphasis added).
In brief defense argues that he declined transcription prior to trial because of the cost and because he wanted to wait to see if a transcript was needed; however, he stresses the difference between a transcript and recording and that he never intended to waive the recording of the proceedings.
Throughout the verbatim transcripts of the constitutional convention and in the clear words of Art. 1, § 19, dichotomy exists between recordation and transcription. This dichotomy was clear when the delegates discussed the cost of providing this constitutional right and when Mr. Dennis explained his proposed amendment. Further, it is much more likely that defense would waive transcription rather than recordation. *340 As Mr. Arnette reasoned during the constitutional convention:
"This amendment does say that you can waive it. But the problem with that is. . . that nobody is going to waive it before the record is taken, before the trial is over, because he doesn't know whether there's a mistake made until the trial is over."[8]
Mr. Hargrave in his article, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 60-62 (1974) explains the waiver provision in Art. 1, § 19 as follows:
"Since the provision requires that review be based on a `complete record of all evidence upon which the judgment is based,' some kind of stenographic or sound recording of the testimony will be necessary. The section, of course, does not require that the record be transcribed in all cases; but a record must be available to one who might choose to take advantage of his right of review. If he makes a knowing and intelligent waiver of the right, the record need not be transcribed." (Emphasis added).
Pretermitting whether the intelligent waiver of right in Art. 1, § 19 is the right of recordation or judicial review, this court cannot say that the record demonstrates a knowing and intelligent waiver of the right of recordation, see State v. Bizette, 334 So.2d 392 (La.1976), or judicial review, and absent an intelligent waiver on record, this court cannot presume a waiver.
Finally, the state contends that defendant did not make any objection during trial that was overruled and in his writ, petitioner does not state what specific parts of the record are needed. First, according to the defense in brief and the judge ad hoc in his narrative account, the defense made a motion for judgment of acquittal which was denied. Second, defense's assignment of error is that there is no evidence to support a finding of resisting arrest so defense needs a complete record transcribed rather than designating a specific part. Third, failure to make contemporaneous objections and to designate parts of the record for appellate review may procedurally bar the right of judicial review, State v. Spain, 329 So.2d 178 (La.1976), but not defendant's constitutional right to an initial recording of all the evidence upon which the judgment was based.
We find meritorious defendant's Assignment of Error No. 1.

Assignment of Error No. 2
Defense contends that the trial judge erred in denying its motion for a new trial which alleged that defendant's rights were prejudiced because the judge ad hoc and his son are members in a two man law firm that represents the Lafayette Parish sheriff's department. In brief defense contends that a lawyer whose only law partner represents the sheriff's office should not have been appointed, and the judge ad hoc should have recused himself, emphasizing the apparent conflict when the son represents the Lafayette Parish sheriff's department and the father (his partner) sits as the judge ad hoc in a trial where the arresting officer, the charging officer and the prosecuting witnesses all are members of the Lafayette Parish sheriff's department.
Defense did not file a motion to recuse because it did not learn that the judge's firm represented the sheriff until after the trial.[9] Therefore, instead of assigning error to the denial of a motion for recusal (which must be made before verdict or judgment, C.Cr.P. 674), the defense assigns error to the denial of the motion for a new trial. Davis v. Board of School Commissioners, 517 F.2d 1044, 1051 (5 CA 1975) cert. den. 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).
C.Cr.P. 671 provides:

*341 "In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree;
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
(4) Is a material witness in the cause;
(5) Has performed a judicial act in the case in another court; or
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
In any cause in which the state, or a political subdivision thereof, or a religious body is interested, the fact that the judge is a citizen of the state or a resident of the political subdivision, or pays taxes thereto, or is a member of the religious body is not of itself a ground for recusation."
However, the state correctly argues that the relationship grounds in C.Cr.P. 671(2) are not applicable to the instant case because the judge ad hoc is not related to the assistant district attorney nor the defense attorney employed in the cause; further the judge ad hoc's law firm and his son are not alleged to be employed by the Lafayette Parish sheriff's office in defending any pending civil litigation in the same cause. Therefore, neither C.Cr.P. 671(2) nor (3) are applicable in the instant case.
In interpreting the provision of C.Cr.P. 671(1), this court in State v. Maduell, 326 So.2d 820 (La.1976), held that recusal under § 1 would not be justified upon mere general conclusory allegations, but the disqualifying bias, interest or prejudice must be of a substantial nature. In Maduell, this court found nothing in the record demonstrating that the ground for recusal had support or that in the conduct of the trial the judge was anything other than fair and impartial. In the instant case, however, this court has no record to review the judge's conduct, and as the state correctly points out the defense's application and brief do not allege or show any specific instances of the judge's partiality or bias nor any gain that the judge would have from finding the defendant guilty. C.Cr.P. 671(1) is not applicable in the instant case.
Finally, C.Cr.P. 671(6) provides that a judge shall be recused when he would be unable, for any other reason, to conduct a fair and impartial trial, and the Official Revision Comment to C.Cr.P. 671 provides in part:
"Ground (6) is a catchall provision to include circumstances which clearly indicate that the judge would not be able to serve fairly and impartially, even though none of the specified grounds for recusation exist."
The American Bar Association has recommended that a judge should disqualify himself "in a proceeding in which his impartiality might reasonably be questioned." Code of Judicial Conduct, Canon 3(C)(1). The federal recusal statute has adopted this standard also in 28 U.S.C. § 455(a). Professor Orfield stated that "courts should not be only impartial but above the suspicion of partiality." Orfield, Criminal Procedure From Arrest to Appeal, 374 (1947), as quoted in the Official Revision Comment for C.Cr.P. 671. In State v. Lemelle, 353 So.2d 1312 (La.1977), this court found that even the appearance of impartiality, as well as impartiality itself, outweighs the inconvenience caused by the recusal of the trial judge. We find that the judge ad hoc should have recused himself on his own motion and that he abused his discretion in failing to grant a new trial.
For the reasons assigned, petitioner's conviction is reversed and this case is remanded to the City Court for a new trial.
*342 SUMMERS, C. J., dissents.
MARCUS, J., concurs.
NOTES
[*] Chief Judge William A. Culpepper participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Joe W. Sanders, Retired.
[1] The difficulties with the 1974 amendment to C.Cr.P. 843 were explained by Mr. Joseph at 35 La.L.Rev. 597, 598 (1975):

"In another respect, however, the amended article is probably unconstitutionally restrictive. Although Article 1, § 19 of the 1974 Constitution clearly applies to city court proceedings and to unappealable cases tried in district court, the Code requires a record only in cases tried in district courts `in which the possible sentence may give the defendant the right to appeal.' The differences in coverage can be explained by the fact that the amended code article was drafted by the Louisiana State Law Institute prior to the adoption of the new constitution. An additional amendment to include all district court and city court cases should be adopted."
Mr. Joseph noted that Louisiana House Bill 164, Regular Session of 1975 had been proposed to broaden the coverage of C.Cr.P. 843 and subsequent to his article the proposal was passed and became the 1975 amendment now in question.
[2] This question was expressly reserved in State v. Robertson, 310 So.2d 619 (La.1975), where this court reviewed three pre-1974 misdemeanor convictions. The defendant's court appointed attorney failed to request recordation as in the present case and in affirming the convictions this court reasoned:

"Under the law applicable at the time of trial, the accused was not entitled as of right to have the testimony as to guilt or innocence recorded and transcribed, unless the accused or his counsel so requested. La.R.S. 13:961, subd. C (1950); 15:291 (1960). Whatever might be the merit of the claim under the 1974 statute (since the record shows no intelligent waiver), the failure of court-appointed counsel to request recordation and transcribing is not reviewable, as the denial of a statutory or constitutional right, on an appeal under the law in effect at the time of the trial." 310 So.2d at 621-622.
[3] . Mr. J. Jackson explained:

"Now, some people say we are not talking about cost. I'm suggesting to you that I think, personally, as a delegate, that some people are weighing that factor and that's the way they are going to decide how to vote on this amendment. Can we really substitute cost for justice?
I'm suggesting to you that whereas we had provided our judiciary, where we have provided our district attorneys with the necessary funds, with the necessary staff, with the necessary supportive services, then it seems no more than reasonable that we ought to provide at least as this amendment provides. . . states, the opportunity for a person who may have his property, certain of his rights forfeited, to have the recordings of that testimony against him. . . ." Verbatim Transcripts of the Constitutional Convention of 1973, Vol. XIII, 42nd day, p. 82.
[4] Id. at 74, 81.
[5] Id. at 77-78.
[6] Mr. Kelly explained:

". . . you could read it in one way whereby it would mean that free transcripts would be provided in all cases including civil cases and everything else.
That's not what this amendment does. And there's one basic question that has to be answered, and that's whether or not we are going to put a price tag on justice. Now anytime a person is called into a court of lawI don't care whether it's a mayor's court, a district court, or whatever court you may bring him intoI think that he should be entitled to have every right provided to him, including this right to know what has been said against him and to have some recordation of the same.
Now, the cost factor has been argued here today heavily. That's the main opposition to this. It is, well, look what this is going to cost. This is just no argument when we start talking about placing a man in jail or taking his property away from him. And this city court argument, that's a fallacy because a city court can provide a cassette recorder just as easily as a district court can. And I'll say this . . . This misuse is not only in city courts or courts of limited jurisdiction, as Mr. Avant answered in a question by me. This goes on in our district courts today. I guarantee you, you get the guy that is called in, is ticketed, say, for simple battery. He's got a good job; he's got a wife to support; he's got children to support. So he gets picked up on a simple battery charge one Saturday night. All right, he goes into court the next Friday or the Friday week, and he doesn't think too much about it because he looks at the penalty and he says, `Well, not too much can happen to me over this. I don't think I'll even go to the trouble of getting a lawyer. I'll go and defend myself.' He walks in there and the judge calls him up and says, `Are you ready for your case?' `Yes.' And let's suppose that he has been apprised of all of his other constitutional privileges. No one ever asked him, `Do you want this recorded?' They are not even going to ask him, if he's got a lawyer sitting beside him, `Do you want this recorded?'
So he goes on and the witnesses testify against him. Now he thinks, `Well, maybe if I am guilty, I'll get a fine or something.' But for some reason, somebody's in a bad mood on this particular day, and the first thing you know, he's been sentenced to four months in jail. He doesn't even have time to go home, tell his wife, `Look . . .,' or call his employer, `I'm not going to make it to work today because I've got four months to serve.' And then he decides, `Well it's high time I'd better get a lawyer because I'm in trouble.'
So he
calls one. Now, what's he going to do? There has been no recordation of any of the evidence presented against him, and by evidence, I'm talking about what witnesses said happened on this particular event. This is the very thing which I think Mr. Avant has in mind. This is no move to abolish city courts. This same thing goes on in district courts. This is a move to protect the average man who doesn't think that he's got legal problems, and he walks into that district court or city court and the first thing you know, he ends up in jail." Id. at 80-81.
[7] Verbatim Transcripts of the Constitutional Convention of 1973, Vol. XIV, 43rd day, p. 27.
[8] Verbatim Transcripts of the Constitutional Convention of 1973, Vol. XIII, 42nd day, p. 79.
[9] The record indicates that the judge ad hoc was appointed and the trial was begun on the same day. No grounds for recusal would exist until the case is assigned. State v. Lemelle, 353 So.2d 1312 (La.1977).