SCHOTT, Judge.
We grant certiorari in order to consider the trial court’s denial of the state’s motion *1025 to recuse the Hon. Frank Marullo in several consolidated cases in the trial court.
Defendants are police officers charged with payroll fraud while participating in the filming of a motion picture. The cases were originally assigned to Judge Rudolph Becker who recused himself. The state alleges that the judges of the criminal district court at an en banc meeting agreed to ask the Supreme Court to appoint an outside judge to hear the cases but they were reassigned to Judge Marullo.
The state filed a motion to recuse Judge Marullo who denied the motion and referred it to Hon. Louis Trent, an ad hoc judge sitting by assignment in place of one of the regular judges of the court. Judge Trent conducted a full hearing and denied the motion. There is no evidence of impropriety on the part of Judge Marullo, and, indeed the state does not accuse him of impropriety. Rather, the state contends that Judge Marullo should be recused for several reasons which collectively and individually cause him to take on “the appearance of impartiality or impropriety” by presiding over the cases.
The state first argues that the “re-cusation” by all the other judges somehow required Judge Marullo to do the same. A judge who is confronted with a motion to recuse himself has to make the decision on his own. If he is not convinced that he should recuse himself he must refer the case to another judge of his court. This is what C.Cr.P. art. 674 requires and what Judge Marullo did. * The action of his colleagues is irrelevant.
Next the state argues that Judge Trent as an ad hoc judge sitting temporarily in place of a regular judge of the court was not qualified to hear the recusation motion. This argument likewise lacks merit. Judge Trent was apparently serving under assignment to perform the duties of a judge who was absent. He was functioning as “another judge” eligible to hear the motion pursuant to art. 674.
At the trial of the motion the state attempted to prove that Judge Marul-lo would take on the “appearance of impropriety” by trying the cases because of an interest or bias he appears to have. The state attempted to support this charge by the facts that 1) the tape of a previous hearing in the case was lost while in the custody of Judge Marullo’s stenographer and Judge Marullo did not disclose the loss until several months later; 2) Judge Marul-lo and defense counsel, Ralph Capitelli, were in business together; 3) Judge Marul-lo had told prosecutors repeatedly and gratuitously that he would not grant any continuances in this case to the state; and 4) there were financial dealings between all of the judges, including Judge Marullo, on the one hand and defendant Krinke involving the use of the Criminal Court building.
As for the tapes, Judge Marullo’s reporter testified that she put the tape in her office the evening of the hearing and the next day it was gone. The record shows that court attaches have access to the room. When she discovered the tape missing the reporter delayed telling Judge Ma-rullo it was missing because she was continuing to search for it and feared the consequences of losing the tape. This explanation is quite plausible and was accepted by the trial judge. We find that no improprieties can reasonably be perceived with respect to Judge Marullo over the loss of the tape or the length of time transpiring before his acknowledgment of the loss.
As to the alleged mutual business venture between Judge Marullo and attorney Capitelli the record shows that the two independently of each other happened to invest in the same cable television station venture. The venture was unsuccessful and is no longer viable. This cannot reasonably be perceived as improper by anyone.
The state’s argument that Judge Marul-lo’s no-continuance warnings demonstrated bias on his part is specious. Such grumblings and warnings are uttered so routinely by trial judges that they can hardly be taken seriously at all much less furnish a basis for the recusation of. the judge.
The state’s final argument has to do with the use of the Criminal Court Building for the filming of a motion picture. On No *1026 vember 4, 1985 Rivers Trussell, Judicial Administrator of the Criminal District Court, wrote a letter to Mr. Phil Seifert of the Louisiana Film Commission advising him that “the court” had set a fee schedule for the use of the courthouse building for film productions. The schedule called for $2,500 per day for a feature film, $1,500 for a TV mini series, and $1,000 for a TV Pilot or Series Episode. A copy of this letter was sent to August Krinke, one of the present defendants.
The funds for the use of the courthouse building are paid to the Criminal Court Renaissance Fund, a non-profit corporation established for the maintenance, renovation, restoration, and beautification of the Criminal Court Building. Trussell administered the Fund under the direction of a committee of the judges of which Judge Marullo was a member. Apparently defendant, Krinke, was some sort of go-between or intermediary between the film industry personnel and the fund. The state contends that Judge Marullo was thus in a position of negotiating with Krinke for something of benefit to himself in the form of the enhancement or embellishment of the courthouse where he sits as judge.
Judge Marullo testified that he had nothing to do with the pricing of the building and no personal knowledge or interest other than to have insisted in the past that something reasonable be paid for the use of the building. He stated that he derived no personal benefit from the preservation of the building, but that neither the City nor the state was willing to keep it up; that the Fund was not supported primarily by the film companies but by donations from preservationists and private individuals. Judge Marullo testified unequivocally that he had no bias or prejudice in these cases and had no problem being fair and impartial in the handling of them.
Conceding that none of the evidence discussed above establishes any impropriety on Judge Marullo’s part the state argues that when taken together the facts give him the appearance of impartiality or impropriety such as to warrant his recusal. In support of this argument the state relies principally on State v. Le Blanc, 367 So.2d 335 (La.1979) in which the court reversed a conviction not because of any evidence that the judge was impartial but because of the appearance of the impartiality. In that case the judge ad hoc who presided at the trial and his son were law partners; they represented the sheriff of the parish; and all the prosecuting witnesses were members of the sheriffs department. From these facts the court concluded that the appearance of impropriety outweighed the inconvenience caused by the recusal of the judge.
In the present case the facts do not support the same conclusion. This was the conclusion reached by the trial judge who heard the motion to recuse and we find no error in that conclusion. We do not find that the issues raised by the state are of such a nature that observers or members of the public could reasonably perceive that Judge Marullo would handle these cases improperly as a result of such issues. In other words we see no basis for anyone to perceive an appearance of impropriety on Judge Marullo’s part such as to warrant his recusal.
Accordingly, the judgment denying the motion to recuse is affirmed.
AFFIRMED.