638 So.2d 225 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Christopher Duane CLARK, Defendant-Appellant.
No. CR93-903.
Court of Appeal of Louisiana, Third Circuit.
March 16, 1994.
Rehearing Denied July 14, 1994.
*226 Monique Yvette Metoyer, Alexandria, for plaintiff-appellee State of LA.
Bridgett Brown, Alexandria, for defendant-appellant Christopher Duane Clark.
Before KNOLL and COOKS, JJ., and CULPEPPER[*], J. Pro Tem.
KNOLL, Judge.
This appeal arises out of the conviction after trial by jury of defendant, Christopher Clark, for second-degree murder of Sharon Jenkins in violation of LSA-R.S. 14:30.1.[1]

FACTS
Defendant and Sharon Jenkins lived together with their two young children in Lecompte, Louisiana. On the evening of Sunday, May 24, 1992, Sharon arrived at the trailer home where she and the defendant resided. Defendant, apparently angry over her unexplained absence from home during the day, began arguing with Sharon outside of the trailer home. There was testimony indicating defendant physically accosted Sharon, pushing her to the ground, tearing her shirt and breaking her glasses. A friend of the defendant apparently intervened long enough for Sharon to retreat into the trailer. Soon afterwards, defendant entered the trailer with a large caliber handgun he had retrieved from his car. Defendant claimed it was not the argument that prompted his retrieval of the gun, but rather that he always brought his handgun in from the car at the end of the day as a matter of habit. Regardless of defendant's motive for bringing the gun inside the trailer, the argument continued and a within a few minutes, Sharon received a gunshot wound to the head. In an attempt to save her, defendant frantically drove Sharon to the hospital, but she was pronounced dead shortly after arrival.
No witness testified to seeing the actual shooting. Sharon's brother, Willie Jenkins, was in the trailer at the time of the shooting and testified that he had seen defendant point the gun at Sharon's head. However, *227 Willie also testified his attention was diverted away from the defendant and Sharon at the moment the actual shot was fired. Defendant claimed the shooting was unintentional. He asserted that during the argument, he threw the gun to the floor and upon hitting the floor, it fired, striking Sharon in the head.
The State countered this assertion with expert testimony that the handgun in question had safety features that would prevent it from firing in this situation and that there were powder burns around Sharon's wound indicating the gun had been within inches of her head when it fired.

ASSIGNMENTS OF ERROR
We address the defendant's assignments of error in the order in which they are briefed.

Assignment # 7
The defendant asserts the trial court erred in "failing and refusing to let counsel for the defendant make legal objections on the record and present legal arguments to the court contemporaneous with the objections." Instead of removing the jury from the courtroom each time the State and defendant presented arguments on an objection, the trial court had the counsels approach the bench and give their arguments in a tone of voice the jurors could not overhear. Apparently when this was done, the courtroom recording equipment could not record the arguments of counsel on the objections, nor the trial court's reasons for its rulings. Defendant has also pointed to some instances where the recording was stopped as soon as the objection was made, preventing even the grounds for the objection from being recorded. Defendant contends this alone should be grounds for reversal, citing State v. LeBlanc, 367 So.2d 335 (La.1979) and LSA-C.Cr.P. Art. 843.
First, we find defendant's reliance on LeBlanc misplaced. While LeBlanc does discuss a defendant's constitutional right to judicial review based upon a complete record of all evidence upon which a judgment is based, LSA-Const. Art. 1, sec. 19, it does not require the argument of counsel to be recorded. See State v. Johnson, 438 So.2d 1091 (La.1983), where the missing portion of the transcript consisted not of testimony, but of the argument of counsel. Johnson found such argument to be immaterial to an adequate review of the trial court's ruling.
Secondly, State v. Richardson, 529 So.2d 1301 (La.App. 3 Cir.1988), writ denied, 538 So.2d 587 (La.1989), presented almost exactly the same factual situation as the case sub judice. In finding Article 843 did not require reversal, the court stated:
"The defense counsel stated his objection and the basis therefor prior to approaching the bench ... On appeal, we can easily review the correctness of the rulings on each objection as the basis for the objection is on the record and the Trial Judge's ruling on each is stated. Hence, we feel that the missing arguments of counsel are an inconsequential omission, immaterial to a proper determination of the appeal. Also, defendant's trial counsel who made the objections certainly has knowledge of his own arguments made at the bench in support of his objections. The failure to record the arguments of counsel at the bench conference in no way interfered with or prejudiced the defendant's right to appeal."

Richardson, supra, at p. 1308.
While defendant correctly points out some examples in the record where the grounds for the objections were not recorded, he has in no way shown how this has prejudiced him. None of defendant's assignments of error relate to an objection where this court cannot clearly ascertain from the record what took place in the courtroom. For these reasons, we find this assignment to be without merit.

Assignments # 4 and # 5
These assignments concern the testimony of Ronald Jewel, who was qualified as an expert in firearms identification. Mr. Jewel first testified about the safety features of the defendant's handgun and its inability to accidently discharge if it had simply struck the floor as defendant claims. Concluding this line of questioning, the State began to question Mr. Jewel about the victim's gunshot wound and what this evidence related about *228 the distance of the gun from the victim when it fired. After defendant objected that this was beyond the witness's competence, the court allowed the State to establish Mr. Jewel as an expert in the field "to identify how far away the gun is fired." However, the trial court did not give the defendant the opportunity to traverse the witness on his qualifications in this field, rather the trial court simply noted the defendant's objection.
In assignment # 4, defendant asserts Mr. Jewel was not qualified to testify concerning the distance of the gun from the victim's head when fired. Assignment # 5 concerns the trial court not allowing defendant to traverse Mr. Jewel on his qualifications to testify on this subject.
It is a well settled rule that a trial judge is vested with wide discretion in determining the competence of expert witnesses. State v. Trosclair, 443 So.2d 1098 (La.1983). Mr. Jewel had worked in the State Police Crime Laboratory for 19 years in the area of firearms identification. Mr. Jewel related that he had conducted numerous examinations concerning the powder burns left on clothing when a gun is fired into clothing at close range. He estimated he had testified in court on this subject on approximately 50 occasions. On examining the photos of the victim's wound, Mr. Jewel opined the gun was probably within six inches of the victim's head when fired. This was based on damage done to the skin surrounding the bullet wound.
While we agree with defendant that it was error to allow Mr. Jewel to testify before defendant had the opportunity to cross-examine Mr. Jewel on his competency as an expert, see State v. Catchings, 440 So.2d 153 (La.App. 4 Cir.1983), on reviewing the record, we find this to be harmless error. First, as noted above, the trial court has wide discretion in qualifying experts and we do not find that the trial court abused this discretion in the case sub judice. Secondly, the defendant took the opportunity to thoroughly review Mr. Jewel's qualifications and the basis for his opinion during cross-examination. Mr. Jewel candidly admitted his experience was with powder burns on clothing and not skin tissue. Furthermore, Mr. Jewel admitted his estimation of the proximity of the gun was based solely on a photograph of the victim's wound. Without more information, Mr. Jewel conceded there was some weakness in his estimation. Thus it is unlikely the jury gave undue weight to Mr. Jewel's opinion.
Finally, Mr. Jewel's testimony concerning the distance of the gun from the victim's head was corroborated by the Dr. George McCormick. Dr. McCormick, the forensic pathologist who performed the autopsy on Sharon Jenkins, opined the gun must have been held within inches of the victim's head when it was fired. This opinion was based on the "pealing back" of the skin around the bullet wound caused by the muzzle blast of the gun at a very close range. No attempt was made to contradict this testimony during cross-examination. Considering the strength of Dr. McCormick's testimony, Mr. Jewel's testimony could not have unfairly prejudiced defendant. See State v. Clark, 340 So.2d 208 (La.1976), cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977), where the defendant was not prejudiced by the testimony of an unqualified expert when a qualified expert later testified and reached the same conclusion. This assignment is without merit.

Assignment # 10
In this assignment, defendant argues the trial court erred in not ensuring defendant was given anti-depressant drugs prior to and during trial. The homicide occurred on May 29, 1992, and on June 4, 1992, defendant's counsel filed a motion for the appointment of a sanity commission. The motion was granted and one psychologist, Dr. James Quillin, did interview defendant and file a report with the trial court. However, the commission never rendered a formal opinion because the defendant moved the commission be dismissed and his motion was granted. Defendant's counsel explained that the dismissal was necessary to assist defendant in making bail.
The day prior to trial, the defendant again moved for the appointment of a sanity commission. This motion was ultimately denied *229 by the trial court. In brief, defendant asserts Dr. Quillin "clearly stated that defendant's inability to assist his counsel based on his depressed condition was brought on by the murder and therefore, defendant should have been given these drugs [anti-depressants], which the Court ordered but defendant never received." The record indicates this is not a totally accurate description of events. First, Dr. Quillin's report did not state defendant was unable to assist counsel. The pertinent part of his report states:
"It is also my opinion that the accused presently has the mental capacity to proceed. He understands the nature of the charges against him as well as the seriousness of these charges. He also understands that defenses can be put forth to help him answer these charges. He is aware of basic constitutional and civil rights. He understands the consequences of potential conviction. Importantly, he is able to recall and relate facts pertaining to his actions and whereabouts at the time of the alleged offense with the possible exception of having fired the weapon. He would appear to have no difficulty in assisting his counsel in locating and examining relevant witnesses and would be able to listen to the testimony of the witnesses and inform his attorney of any distortions or misstatement they might make during the course of that testimony. He appears to be capable of maintaining a consistent defense and of testifying in his own behalf should that be necessary in answering these charges. There is some possibility that his depressive condition could worsen under the stress of trial and he should be seen for appropriate antidepressive therapy prior to that point." (Emphasis added.)
Furthermore, while denying the motion to appoint the sanity commission, the trial court did address defendant's need for anti-depressant medication, but made no orders concerning this.
"The only question that could be raised is whether or not he needs some anti-depressant therapy. Dr. Quillan [sic] reports there's some possibility, he doesn't even suggest a probability at that point at that. So the court is gonna order that we proceed with the trial as regularly scheduled. It's not gonna order the sanity commission be impaneled. In the event that you would want an opportunity to have a doctor check to see if you need an anti-depressant drug, I would grant a continuance until the morning to start so that we can see that we can get a doctor in to look. There may very well be, ..., once he is confronted with the fact that he is going to trial, there may be the opportunity at that point in time to have the jail physician check to see if anti-depressants would be of some benefit to him."
The record does not indicate what action was taken after this point. In brief, defendant claims he was denied medication. However, defendant has not pointed out, nor have we found any evidence in the record that a physician saw defendant, prescribed medication, or that the trial court specifically ordered that defendant receive medication. Further, we have found no indication that this issue was ever again brought to the trial court's attention. We must conclude this assignment is without merit.

Assignments # 6 & # 9
By these assignments, defendant contends that the trial court erred in not reading to the jury the requested charges defining negligent homicide.
It is clear that the trial judge is required to charge the jury, in response to an otherwise proper request, as to the law applicable to any theory of defense which a jury could reasonably infer from the evidence. State v. Marse, 365 So.2d 1319 (La. 1978). While it is questionable whether defendant's self-serving testimony was sufficient evidence for the jury to find negligent homicide, we assume, arguendo, that this was sufficient and the trial court erred in not instructing the jury as to negligent homicide. Defendant must still show he was prejudiced by this error.
Defendant relies heavily on State v. Williams, 606 So.2d 1387 (La.App. 2nd Cir. 1992). In Williams, the trial court found it was reversible error for the court not to instruct the jury as to negligent homicide in defendant's second-degree murder trial. In *230 reaching this conclusion, the Williams court distinguished the case before it from Marse, which found the same error, but determined the error to be harmless.
"[I]n State v. Marse, supra and State v. Gray, 430 So.2d 1251 (La.App. 1st Cir. 1983) ... the Supreme Court and the First Circuit Court of Appeal, respectively, found that negligent homicide was a defense the jury could have reasonably inferred from the evidence and, therefore, a negligent homicide instruction should have been given. The convictions in those cases were not reversed, however, because the appellate courts found that the failure to give the negligent homicide instruction was harmless error. In Marse, supra, and Gray, supra, the courts stated that the jury had enough information, without the special jury charge, to understand that if the defendant was only guilty of criminal negligence, the jury should return a verdict of not guilty to second degree murder. In those cases, this information was conveyed to the jury by the trial court instructions and arguments of defense counsel. Those cases are distinguishable from the present case because those factors (trial court instructions and counsel's argument) are not present here." (Footnote omitted.)
On reviewing the record in the case sub judice, it is clear the facts more closely resemble Marse and Gray than Williams. In closing arguments, the defense counsel clearly presented the jury with the law surrounding negligent homicide.
"We just don't see where he specifically intended to kill her. We just don't see that. And we don't see a homicide that would have been murder under Article 30 or 30.1. But, do we see a homicide committed without intent to cause death or great bodily harm? That's manslaughter. Could he have been charged with that? Yes, he could have. Was he charged? No, he wasn't. What else could they charge him with? Negligent homicide. The killing of a human being by criminal negligence. What is criminal negligence? Criminal negligence exists when although neither specific nor general criminal intent is present, but there is such a disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."
We believe the jury had enough information to understand the concept of negligent homicide.
Additionally, Williams can be distinguished in terms of the jury's charge relating to manslaughter. The Williams court noted:
"... the trial court gave no instruction regarding manslaughter as an unintentional killing during the commission of certain felonies or misdemeanors under LSA-R.S. 14:31(2) ... If a trial court gives an instruction under 14:31(2), then a negligent homicide instruction may not be required. See State v. Tompkins, 403 So.2d 644 (La. 1981)." Id. at p. 1390, footnote 1.
In reviewing the record, it is clear the trial court in the case sub judice gave the jury instructions under R.S. 14:31(2) dealing with unintentional killings during the commission of certain felonies or misdemeanors.
For these reasons, while the trial court may have erred in not giving the negligent homicide charge, this error is not reversible.

ERROR PATENT
Because of the unusual procedural history of this case, we must address possible errors patent. As noted above, very soon after his arrest, defendant's counsel moved for the appointment of a sanity commission. However, before a hearing could be held on defendant's competency to stand trial, defendant's counsel moved to dismiss the proceeding and the trial court granted the motion. After defendant's motion for dismissal of the sanity commission was granted, the case proceeded along a normal course with discovery and typical pretrial maneuvering. Four days before trial, defendant's counsel made another motion to appoint a sanity commission. A hearing was held on this motion the day before trial. The evidence consisted of the previously quoted report by Dr. Quillin, a member of the original sanity commission, written before the commission was dismissed, and the testimony of the Vernon Creecy, *231 warden of the jail where defendant was being held. After reviewing this evidence, the trial court denied defendant's motion.
We must decide whether the Supreme Court's decision in State v. Nomey, 613 So.2d 157 (La.1993), requires that we reverse defendant's conviction. In Nomey, a sanity commission was appointed to examine the defendant and did so. After the commission examined the defendant, but before the commission's report was filed with the trial court, the defendant pleaded guilty. This plea was accepted and the defendant was sentenced.
On appeal, the Supreme Court vacated the defendant's guilty plea. The court stressed that when the mental capacity of the defendant to proceed is questioned, LSA-C.Cr.P. Art. 642 mandates "there shall be no further steps in the criminal prosecution, ... until the defendant is found to have the mental capacity to proceed." The court indicated that constitutional due process rights require a strict interpretation of this article. It is against this background that we must analyze the facts of the case sub judice.
While cognizant of the expansive protection the Nomey decision gives to a defendant of questionable competence, there may be circumstances under which a procedural defect in a sanity determination does not require automatic reversal. The Nomey court distinguished State v. Bennett, 345 So.2d 1129 (La.1977), where it did not require a complete reversal.
"In Bennett, the sanity hearing was held, but the examining physicians admitted that they could not be certain of their results without further clinical evaluation of defendant. The trial judge failed to order additional testing upon defendant's request. Defendant was thereafter found guilty as charged by a jury. On appeal, we remanded for another sanity hearing following a complete reexamination of the defendant. Unlike the present case, the defendant in Bennett did receive a hearing, at which the members of the sanity commission testified. Further, the defendant in Bennett alleged he suffered from mental retardation, which we found to be a more static condition than mental illness. Hence, under certain limited circumstances, a retroactive determination of sanity may be permissible. Likewise, we do not mean to foreclose the possibility of a nunc pro tunc competency hearing, if a meaningful inquiry into defendant's competence can still be had, in those cases where the trial judge ignores a bona fide doubt as to defendant's competence to stand trial, or the issue of competence is not raised at trial." Id., footnote 8.
The case sub judice has several factors making this violation of defendant's right to a competency hearing less egregious than in Nomey. First, defendant, through counsel, asked that the original commission be dismissed. Apparently, this was a tactical maneuver to increase defendant's chances of making bail.[2] A few days before trial, defendant made a motion for the appointment of a second sanity commission. At this hearing, the trial court had the benefit of the report from Dr. Quillin of the original sanity commission and this report indicated defendant was indeed competent to stand trial. Finally, defendant did not plead guilty nor did he plead not guilty and not guilty by reason of insanity, but maintained his innocence and proceeded to trial where a jury convicted him.
The only case found on point is State v. Harville, 143 So. 373 (La.1932). In that case, the Supreme Court allowed the defendant to withdraw his plea of "present insanity" and to stand trial on the merits. However, considering the age of this case and the strict interpretation Nomey has given C.Cr.P. Art. 642, we believe it would be imprudent to rely too heavily on Harville. Rather, we choose a course suggested by the above quoted language in Nomey. We believe this is an appropriate case where a retroactive determination of defendant's competency to stand trial should be made, a nunc pro tunc hearing. We recognize that in Bennett, the defendant suffered some degree of mental retardation as opposed to mental illness. However, we also note the Bennett court allowed a retroactive determination *232 of competency where the existing evidence as to the defendant's competency was equivocal. On the other hand, in the case sub judice, the medical evidence in the record strongly indicates that defendant actually was competent to stand trial. It will serve the efficient administration of criminal justice if a retroactive determination of competency can be made.
Therefore we find it unnecessary to set aside the jury verdict at this time, but remand for another sanity hearing, nunc pro tunc, following a complete examination of the defendant in accordance with C.Cr.P. Art. 644. Should the trial court find that the defendant was incompetent to stand trial, the verdict must be set aside and vacated, and defendant remanded to a proper mental institution as long as the incapacity continues. If the trial court finds that defendant was competent, the conviction will be affirmed, reserving to defendant his right to appeal the issues that may arise at the nunc pro tunc hearing. See Bennett, for a similar disposition.

NOTICE OF PRESCRIPTIVE PERIOD
LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing, the trial court shall inform defendant of the prescriptive period for post-conviction relief. The record shows that the trial court did not so inform defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. LSA-C.Cr.P. Art. 921. The three year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. Art. 914 or Art. 922, so prescription is not yet running. Apparently, the purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance; thus, we direct the district court to inform defendant of the provisions of Article 930.8 by sending appropriate written notice to defendant within 10 days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. State v. Fontenot, 616 So.2d 1353 (La.App. 3rd 1993).

DECREE
For the foregoing reasons, we remand this case to the district court for further proceedings in accordance with the views expressed in this opinion. Additionally, if defendant is found to have been competent to stand trial, we direct the trial court to inform defendant of the prescriptive period for post-conviction relief by sending appropriate written notice to defendant within 10 days of the trial court's determination of defendant's capacity to proceed and file written proof of notice in the record of the proceeding.
REMANDED.
COOKS, J., dissents and assigns reasons.
COOKS, Judge, dissenting.
Relying on footnote comments in State v. Nomey, 613 So.2d 157 (La.1993), the majority likens the present case to the facts presented in State v. Bennett, 345 So.2d 1129 (La.1977), and elects to remand it for a so-called "nunc pro tunc" competency hearing. Soon after defendant's arrest, he moved for appointment of a sanity commission. Obviously defendant also desired a determination on his pending request for bond reduction. The trial court was prevented from considering this companion motion prior to conducting a full sanity hearing because La.C.Cr.P. article 642 provides "When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed." Motivated, without doubt, by a desire to secure speedy resolution of his bond reduction request, defendant dismissed the pending sanity motion. Shortly thereafter, his bond was reduced. Four days prior to trial, however, defense counsel again motioned the court for appointment of a sanity commission. This request was denied following a short hearing. At the hearing, the trial court allowed introduction of a three page report later prepared by Dr. James Quillan, a member of the first sanity commission which was disbanded before full examination of defendant and prior to submission of a sanity report. No contradictory hearing was *233 conducted by the district court to determine defendant's mental competency to stand trial. Based solely on the doctor's "after-the-fact" assessment, without any expressions from other members of the first disbanded sanity commission, the trial judge denied defendant's second request to convene a sanity commission deciding to proceed with trial. The court patently erred in proceeding with trial in contravention of the procedures statutorily implemented by Louisiana to protect defendant's "due process" right to a fair trial. Step by step the legislature has set forth certain requirements which must be followed before a defendant may be tried after requesting a sanity examination and hearing. Choosing to ignore clear legislation and the supreme expression of this State's highest court in State v. Nomey, 613 So.2d 157 (La. 1993) which require immediate reversal of defendant's conviction, the majority's decision turns on a "footnote" and remands the case for a "nunc pro tunc" hearing, almost archaic in expression and seldomly used.
As stated by the Supreme Court "Our statutory scheme for detecting mental incapacity zealously guards a defendant's right to a fair trial." State v. Nomey, supra quoting State v. Rogers, 419 So.2d 840 (La.App.1982). The factual events which transpired prior to defendant's trial and the court's failure to follow the procedures required by law do not warrant deviation from the Supreme Court's clear holding in Nomey. This case, pure and simple, is not like State v. Bennett. Here, defendant did not suffer from "mental retardation" and the trial court did not conduct a contradictory hearing in compliance with law or opt to proceed with trial after expressing a "bona fide doubt as to defendant's competence to stand trial." The majority attempts to "pigeonhole" its ultimate decision not to reverse but remand the case for a sanity hearing by pointing to defendant's failure to raise the issue of competency at trial. Defendant's competency to stand trial and his competency at the time of the offense are not synonymous. Defendant's presence of mind at the time of the offense does not negate its absence at the time of trial or vice versa. The majority's decision "misses the point" as aptly noted by the Supreme Court in dismissing the State's argument in Nomey. Quoting Justice Blackmun, the Supreme Court stated:
"`the Due Process Clause does not simply forbid the State from trying and convicting a person who is incompetent. It also demands adequate anticipatory, protective procedures to minimize the risk that an incompetent person will be convicted.' Medina v. California, ___ U.S. ___, ___, 112 S.Ct. 2572, 2584, 120 L.Ed.2d 353 (1992) (Blackmun, J. dissenting) (emphasis in original). Regardless of whether a retroactive determination of sanity can now be made, the fact remains that defendant was deprived of the protective procedures set forth in our criminal code prior to the entry of his guilty pleas, thus depriving him of his due process rights.8 We believe this was the type of situation La. Code of Crim.P. art. 642 was designed to prevent when it mandated, in very clear and unambiguous language, that no further steps in the criminal prosecution' shall be taken until defendant is found to have the mental capacity to proceed. Such was our holding in Harris, and we now re-affirm that interpretation as the correct statement of the law. To the extent that Aylor conflicts with this pronouncement, it is contrary to the language of La. Code Crim.P. art. 642 and must be overruled."
In Nomey the State presented a report prepared by a sanity commission prior to defendant's guilty plea which confirmed he was competent to proceed. This report alone without further compliance with the procedures established to safeguard defendant's due process right to a fair trial was not enough and constituted error requiring immediate reversal of his conviction. The facts of this case are even more compelling. The sanity commission was disbanded prior to submission of any report. The subsequent three-page letter prepared by one of its members at the behest of the State without contradictory hearing or right of the accused to present contrary evidence or cross-examine the commission members is wantonly deficient. There was no sanity hearing, as in Bennett. Without question, defendant's due process rights were violated as set forth in La.C.Cr.P. articles 642 and 647. His conviction *234 is a nullity which is not curable by any retroactive finding after a "nunc pro tunc" hearing. The case should be remanded for new trial and further proceedings consistent with the procedural requirements of law.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Defendant originally asserted 28 assignments of error. However, in his appellate brief, defendant lists only 10 of these original 28 assignments, and of the 10 assignments listed in his appellate brief, defendant has addressed only 6 of these in his arguments. Those assignments not argued in brief will be considered abandoned. Uniform Rules, Courts of Appeal Rule 2-12.4.
[2] The minute entry of the trial court indicates that on the same day defendant moved to dismiss the sanity commission, his motion to reduce bond was granted.