529 So.2d 1301 (1988)
STATE of Louisiana
v.
Albert "Bud" RICHARDSON.
No. CR87-381.
Court of Appeal of Louisiana, Third Circuit.
July 21, 1988.
*1302 J. Michael Small, Alexandria, for defendant-appellant.
Asa Skinner, Asst. Dist. Atty., Leesville, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
DOMENGEAUX, Judge.
Defendant, Albert "Bud" Richardson, was indicted by a grand jury on the charge of second degree murder; a violation of La.R.S. 14:30.1. The indictment also charged defendant with the use of a firearm to commit the offense, in violation of La.R.S. 14:95.2. The defendant's first trial ended in a mistrial, as the jury was unable to agree on a verdict. At a second trial, eleven out of twelve jurors found defendant guilty of second degree murder. The defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence with an additional two years, to be served consecutively, pursuant to La.R.S. 14:95.2. The defendant has appealed his conviction based on twenty-one assignments of error.

*1303 FACTS
On March 18, 1986, the defendant, Albert "Bud" Richardson, then fifty-four years old, entered the Slagle Grocery Store in Slagle, Louisiana, and, within minutes, shot the victim, Dwain Funderburk, fifty-three years old, in the forehead. Dwain Funderburk ultimately died from this gunshot wound on May 26, 1986.
The victim and the defendant were well acquainted; both grew up in the community; Funderburk was married to the defendant's niece and, at one time, resided in a house trailer on the defendant's property, less than one hundred yards from the defendant's residence. Their relationship appears to have deteriorated as of approximately three months before the shooting when the defendant accused Funderburk's stepson of stealing welding equipment from the defendant's residence and reported these allegations to the police. The accused stepson ultimately confessed to this crime.
Additionally, in late February, 1986, a verbal altercation arose between the defendant and Funderburk when the defendant attempted to establish a new property/fence line between the property of the defendant and Funderburk's mother-in-law. After "cussing each other out", both parties pulled out pocket knives and the defendant threatened Funderburk with a wooden club. As the defendant retreated to his vehicle parked nearby, Funderburk fired a shotgun in the direction of the defendant but did not hit him.
In the early afternoon of March 18, 1986, the defendant contacted the police officer in charge of the investigation of the defendant's stolen welding machine. The defendant told the officer of the altercation over the property line and informed the officer that "they are not going to run over me anymore". At 6:30 p.m. on the same afternoon, Funderburk and another stepson entered the Slagle store in order to purchase various hardware. Funderburk initially stopped at the end of the first aisle while the stepson continued on to the second aisle. Apparently, although it is not clear from the trial testimony, Funderburk was either just going over to the second aisle or had just entered the second aisle when the defendant walked in. As the defendant entered the store, he paused and then proceeded down the first aisle. The testimony of the defendant and the witnesses vary as to what happened next.
The victim's stepson who was on aisle two testified that he saw the defendant coming down aisle one and heard him say to Funderburk "I am tired of being treated like this, you son-of-a-bitch." Funderburk quickly grabbed a hoe from a barrel located at the end of aisle one and positioned himself in a defensive stance. He then forced the defendant to back up towards the store entrance by waiving the hoe in a left to right manner, saying repeatedly "Get back and leave me alone".
Two cashiers who observed the altercation confirmed that the victim said this as he maneuvered the defendant back to the front of the store. Although neither cashier observed the entire event, one cashier took notice of the participants after she heard a metal against metal noise. She looked up and saw Funderburk pulling a hoe from the barrel. The cashiers stated that when the defendant reached the door he produced a gun, stated that he was going to kill the victim, and shot the victim in the forehead from a distance of three feet. Funderburk died from this gunshot wound two months later.
The defendant argued that he acted in self-defense. He claimed that after the property line confrontation, he altered his lifestyle in order to avoid meeting Funderburk. The defendant claimed that he was unaware that Funderburk was present when he entered the store and that upon realizing that, Funderburk was present, he tried to avoid a confrontation by going down an aisle that the victim was not on. The defendant stated that, as he paused on aisle one, Funderburk yelled "Bud, you son-of-a-bitch" and immediately hit the defendant in the head with the handle of a *1304 hoe. The defendant claimed that Funderburk then raised the bladed end of the hoe as if to strike at the defendant again. The defendant stated that, he backed up towards the front of the store and fired because he believed he was in danger of being killed.
All eyewitnesses testified that they did not see Funderburk raise the hoe as if to strike the defendant. Three of the arresting officers testified that they saw no bruises or bumps on the defendant's head. However, the jailer and a visitor of the defendant testified that the defendant did have a lump or mark on his head as of the night of the shooting and on the following day.
The defendant has appealed his conviction and sentence based on twenty-one assignments of error.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the defendant asserts that the Trial Court erred in overruling the defendant's challenge for cause and thus, forced the defendant to use one of his peremptory challenges to discharge a juror. The defendant argues that it was unreasonable to conclude that the prospective juror, whose wife was the first cousin of the victim and whose brother-in-law had been a witness for the defense in the first trial and who was a potential witness in this trial, would be influenced by these relationships and would be unable to render an unbiased and impartial verdict.
La.C.Cr.P. art. 797 provides in pertinent part that:
The state or the defendant may challenge a juror for cause on the ground that: ...
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict; ... (emphasis added).
A challenge for cause should be granted, even if the juror declares an ability to remain impartial, when the juror's responses reveal facts from which bias, prejudice or impartiality may be reasonably implied. The Trial Judge is afforded wide discretion in ruling on a challenge for cause and the ruling should not be disturbed absent an abuse of discretion. State v. Jones, 474 So.2d 919 (La.1985); State v. Smith, 430 So.2d 31 (La.1983). A charge of juror bias may be removed if the prospective juror is rehabilitated, that is, if the Court is satisfied that the juror can render an impartial verdict according to the evidence and instructions given by the court. State v. Gibson, 505 So.2d 237 (La. App. 3rd Cir.), writ denied, 508 So.2d 66 (La.1987).
The prospective juror, Mr. Elton Thompson, informed the court that his wife was a first cousin of the victim. Upon further questioning, Mr. Thompson stated that his family was not close and neither he nor his wife had attended the victim's funeral. Also, but for the fact that Mr. Thompson's wife was notified by her brother of the victim's death on the day of the shooting, he had not discussed the incident with any other family member. He did not know the victim's brother or his children. Additionally, Mr. Thompson stated that in the twenty-three years he had been married he had never visited the victim's residence and the victim may have been to his home on only one occasion. Upon extensive questioning by the Trial Judge, Mr. Thompson stated that his relationship would not influence his decision nor would it create an uncomfortable situation in his family if he entered a not guilty verdict. He also stated that he had formed no opinion and would hold the State to its heavy burden of proof.
The defendant argues that under State v. Brown, 496 So.2d 261 (La.1986), the Trial Court erred in denying the defendant's challenge for cause because under certain circumstances, it is unrealistic for a court to expect a prospective juror to be impartial. *1305 Brown is clearly distinguishable from the case sub judice. In Brown, three prospective jurors knew the victim or the victim's family, or had formed a preconceived notion as to the defendant's guilt. The first prospective juror stated that she knew the victim's family well and that this relationship with the victim's family would probably affect her in arriving at a verdict. She also stated that she would have great difficulty in facing the family of either the defendant or the victim. The second prospective juror stated that he had followed the case in the newspaper for two years and had a "mental block" as to the defendant's guilt. The third prospective juror stated that his son played little league baseball with the victim's younger brother and that he visited with the victim's family in the bleachers during a game. Also, the victim's family had attended a party for the baseball team that had been hosted by the prospective juror. He also stated that he would probably have difficulty facing the victim's family if he refused to apply the death penalty in the event that the defendant was found guilty. The Court ruled that even though these prospective jurors had indicated that they could give the defendant a fair trial, it was unrealistic to believe that these jurors could serve impartially because of their personal relationships with the victim or his family or because their opinions were predisposed in the case.
In this case, unlike two of the prospective jurors in Brown, besides the fact that Mr. Thompson was married to the victim's first cousin, he had almost no personal contact with the victim. Unlike the third prospective juror in Brown, Mr. Thompson never expressed any reservation about his ability to judge the case impartially nor did he exhibit any preconceived notions about the defendant's guilt or innocence. We can find no cases which support the defendant's contention that a relationship between the juror and the victim by blood or marriage will per-se disqualify a juror. The relationship must be such that it would be unreasonable to conclude that it would influence the juror in arriving at a verdict. La.C.Cr.P. art. 797(3). See State v. Blanton, 312 So.2d 329 (La.1975) where no error was found in allowing a third cousin of the victim to be a juror, and State v. Hodgeson, 305 So.2d 421 (La.1974), where the juror's wife was an unspecified relative of the victim and no error was found in denying the challenge.
Also, although Mr. Thompson's brother-in-law had been a witness in the initial trial, he was not listed as a prospective witness for this trial. Furthermore, as a witness for the defense in the first trial, his testimony would presumably have been favorable to the defendant. Thus, any bias by the prospective juror regarding this witness would have aided, not prejudiced, the defendant. cf. La.R.S. 15:432.
As the prospective juror's relationship with the victim did not indicate that he was or would be influenced in arriving at a verdict, we find no abuse of discretion on the part of the Trial Judge in denying the defendant's challenge for cause.

ASSIGNMENT OF ERROR NO. 2
The defendant next asserts that he received inadequate notice of the State's intention to introduce inculpatory statements. The defendant also contends that the introduction of inculpatory statements which were in evidence in his original trial were unduly prejudicial and amounted to reversible error.
La.C.Cr.P. art. 768 provides that:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
The purpose of this statute is to avoid surprise and to allow the criminal defendant *1306 adequate time for preparation of a defense. State v. Parker, 436 So.2d 495 (La. 1983); State v. Foster, 437 So.2d 309 (La. App. 2nd Cir.), writ denied, 440 So.2d 734 (La.1983). Therefore, notice must be sufficiently specific to permit the accused a full opportunity to meet the issue. Where there is a technically deficient notice, there is no reversible error where the accused has actual notice. State v. Sneed, 316 So. 2d 372 (La.1975); State v. Foster, supra.
In this case, prior to his opening statement, the prosecutor gave written notice to the defendant of its intention to introduce the defendant's statements made to police officers on the day of the offense. Additionally, the defendant was notified of the State's intention to introduce "any and all statements made by the defendant and/or confessions made by the defendant, Albert `Bud' Richardson, which were introduced into evidence and testified to in the previous trial, State of Louisiana v. Albert `Bud' Richardson, held in this Honorable Court on September 8-12, 1986, a copy of which transcript has been provided to both counsel for the State and the defendant." Defense counsel objected to the sufficiency of this notice.
The same attorney represented the defendant at both trials. Additionally, since this attorney was present at the first trial, he had actual notice of the testimony adduced at that proceeding. The notice provided by the State was sufficient and did not deny the defendant a full opportunity to meet any issue presented in the second trial. Therefore, reversal is not warranted.
The defendant also argues that the State was given an unfair advantage because the Trial Judge denied defense counsel the right to use the transcript of the first trial to impeach State witnesses. The Trial Judge informed both counsel for the State and the defense not to "elude to the fact that a previous trial was held." The Trial Judge did not deny the defendant the opportunity to cross-examine these witnesses but merely took notice to prevent counsel from making it apparent to the jury that the testimony was from a previous trial. In fact, the defendant's allegation of "not being able to make reference to the prior testimony in the previous proceeding" is incorrect. The record is replete with instances where defense counsel impeached the testimony of state witnesses with prior testimony.
For the reasons stated, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
The defendant next argues that the Trial Judge improperly limited the scope of the defendant's opening statement. During the opening statement, defense counsel sought to mention how the victim's wife would testify "if the State calls her". Upon objection, the Trial Judge ordered defense counsel not to speculate as to the testimony of someone not subpoenaed by the State, but did allow defense counsel the opportunity to subpoena this witness if he so desired. The defendant alleges this evidence was a vital part of the self-defense claim and that he was prejudiced by not being allowed to discuss this during opening statements.
Although La.C.Cr.P. art. 765(4) provides for an opening statement by a defense counsel, the article does not enunciate the guidelines for the content of this statement. State v. Lee, 498 So.2d 1177 (La.App. 3rd Cir.1986), writ denied, 504 So.2d 874 (La.1987). Where defense counsel does make an opening statement, its scope should be confined to the explanation of the nature of the defense and the evidence by which he expects to establish it. State v. Lee, supra. A Trial Judge has broad discretion in controlling opening statements and a ruling should not be disturbed absent an abuse of discretion. State v. Denney, 352 So.2d 204 (La.1977).
During opening statements, defense counsel was allowed to detail his theory of self-defense and the evidence to *1307 be presented in support thereof. The State had not subpoenaed the victim's wife and it was improper for the defense counsel to suggest how an individual would testify when she was not scheduled to testify. The Trial Judge made it clear that a subpoena would be issued should the defendant wish to call the victim's wife as a witness. The defendant was not prevented from fully presenting his defense at trial. Therefore, there appears to have been no error in the Trial Court's ruling.

ASSIGNMENT OF ERROR NO. 11
By this assignment of error, the defendant contends that reversible error occurred when the prosecutor used an in-court demonstration to determine the period of time between when the defendant entered the store and when the verbal altercation was observed. The defendant asserts that the demonstration had the effect of allowing the prosecutor to testify to the time period. The defendant concedes that an objection to these actions was maintained but argues that an admonition to the jury was insufficient to remedy the resulting prejudice.
The defendant's claim of self-defense rested upon his assertion that he was unaware of Funderburk's presence in the store. The defendant claimed that he entered the store, paused upon seeing Funderburk on aisle two and then proceeded down aisle one in order to avoid any confrontation.
The State alleged that the defendant knew the victim was in the store because a truck often driven by the victim was parked outside. The State argued that the defendant entered the store in pursuit of Funderburk. To rebut the defendant's allegations, the two store cashiers testified as to the time and manner in which the defendant entered the store. The cashiers stated that the defendant walked into the store, paused briefly and then proceeded directly down aisle one towards the victim. To emphasize the time involved one cashier was questioned as follows:
Q. Now, in your mind, I'm going to ask you and I'm going to tell you a time that I'm going to begin, and I'm going to ask you to tell me the beginning time that you saw this defendant, Bud Richardson, walk in that store until the time it was that you saw them coming back up the aisle?
A. Okay.
Q. And, I'm going to tell you when to begin and tell me whenever to stop?
A. Okay.
Q. Begin. (PAUSE)
A. Okay.
Q. Approximately, seventeen seconds?
Upon objection by defense counsel, the Court admonished the jury to disregard the prosecutor's remarks. The Trial Judge has broad discretion in permitting or refusing in-Court experiments. However, simple demonstrations by a witness are generally permissible. Criteria for withholding permission include considerations arising from the possible disruption of orderly and expeditious proceedings. State v. Hampton, 326 So.2d 364 (La.1976); State v. Mays, 315 So.2d 766 (La.1975).
In the instant case, the Trial Judge used his discretion in rejecting the in-Court demonstration and the prosecutor's remarks. The Court then admonished the jurors to disregard the prosecutor's remarks.
La.C.Cr.P. art. 770 provides grounds for a mandatory mistrial when the District Attorney makes a remark or comment regarding enumerated subject matters. In this case, the prosecutor's remarks do not fall within Article 770. Therefore, the defendant was not entitled to relief beyond the admonition unless he was unduly prejudiced. La.C.Cr.P. art. 771. State v. Thompson, 489 So.2d 1364 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986); State v. Maillian, 464 So.2d 1071 (La.App. 1st Cir.), writ denied, 469 So.2d 982 (La.1985). The general rule regarding reversible error due to improper questioning where the Judge has ruled in a defendant's favor and admonished the jury *1308 to disregard the question requires a clear showing that the matters complained of are of such an extreme prejudicial nature that the damage caused could not be erased from the mind of the jurors and that, as a consequence, the defendant was deprived of a fair and impartial trial. State v. Morris, 404 So.2d 1186 (La.1981); State v. Maillain, supra.
The prosecutor's remark, while inappropriate, was not of such a nature that the defendant was unduly prejudiced. In fact, after the remark, the defense counsel was able to cross-examine this particular witness as to inconsistent statements regarding the elapsed time and to present the self-defense theory. For these reasons, it is clear that the defendant was not deprived of a fair trial by this remark.

ASSIGNMENT OF ERROR NO. 21
Next, the defendant argues that he is denied his right to meaningful appellate review and should be granted a retrial because the court reporter did not transcribe the arguments of counsel on the numerous objections at trial nor did the transcript include the Trial Judge's reasons for ruling on each objection.
At the beginning of the trial, the Trial Judge informed all counsel that objections by either side would be argued at the bench in order to avoid the continual removal of the jury. A review of the trial transcript shows that the court reporter did not transcribe the arguments of counsel at the bench nor transcribe the Trial Judge's reasons for ruling. However, after a complete review of the record, we note that in nearly every instance, the reporter recorded the basis for the objection that defense counsel stated prior to counsel's argument at the bench and the transcript clearly states whether the objection was sustained or reversed.
La.C.Cr.P. art. 843 provides:
In felony cases, and on motion of the court, the state, or the defendant in misdemeanor cases tried in a district, parish, or city court, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.
The intent of the statute is to effectuate the constitutional guarantee of an appeal in felony cases by making available a full record to support errors assigned. State v. Ford, 338 So.2d 107 (La.1976); State v. Thetford, 445 So.2d 128 (La.App. 3rd Cir. 1984). An inconsequential omission from a record which is immaterial to a proper determination of the appeal does not require the reversal of a conviction. State v. Johnson, 438 So.2d 1091 (La.1983); State v. Ford, supra; State v. Thetford, supra.
The defense counsel stated his objection and the basis therefor prior to approaching the bench. The objections defendant refers to include leading questions, improper foundation laid, nonresponsive answers, argumentative questioning, improper cross-examination and immateriality. On appeal, we can easily review the correctness of the rulings on each objection as the basis for the objection is on the record and the Trial Judge's ruling on each is stated. Hence, we feel that the missing arguments of counsel are an inconsequential omission, immaterial to a proper determination of the appeal. Also, defendant's trial counsel who made the objections certainly has knowledge of his own arguments made at the bench in support of his objections. The failure to record the arguments of counsel at the bench conference in no way interfered with or prejudiced the defendant's right of appeal.
Additionally, we note that the defendant, on appeal, is represented not only by his trial counsel, who filed a brief in this matter, but also by two additional co-counsel, who have also filed a brief herein. Although new co-counsel's motion to enroll as counsel makes reference to defendant's trial counsel withdrawing as defendant's *1309 counsel of record, we have no motion on the part of the defendant's trial counsel to so withdraw and hence, he is still one of defendant's counsel of record. Rule 2-10, Uniform Rules, Courts of Appeal.
The defendant's second set of counsel argue on appeal that under federal jurisprudence, the defendant is entitled to a new trial even absent a showing of prejudice or error and cites as support U.S. v. Brumley, 560 F.2d 1268 (5th Cir.1977); U.S. v. Selva, 559 F.2d 1303 (5th Cir.1977). In Selva, the court stated:
An examination of the second body of case law reveals that a different rule obtains in cases involving new counsel on appeal. When, as here, a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent a specific showing of prejudice or error, is sufficient to mandate reversal. (emphasis added). 559 F.2d at 1306.
Pretermitting the argument of the defendant's second counsel, even if the defendant is not required to show prejudice or error, we find that these arguments were an inconsequential and insignificant portion of the record and hence, their omission in the record does not require a reversal and retrial. Additionally, because the defendant is still represented by his trial counsel, we do not consider the federal jurisprudence cited by defendant's second set of counsel to be applicable to this case.

ASSIGNMENTS OF ERROR NOS. 4-10, 12-20
Neither of defendant's counsels have briefed these assignments of error. Assignments of error Nos. 4, 10, and 12 through 20 were allegedly not briefed on the basis that the transcript omissions hampered defense counsel's ability to discuss these issues. We disagree. A review of the record shows that the basis for the objections were stated on the record. As we were easily able to review the correctness of the rulings based on the preceeding transcript, the basis of the objections stated on the record and the Trial Court's ruling, we do not feel that the defense counsel was prevented from properly briefing and discussing these issues. Hence, as the defendant has failed to brief these assignments of error, they are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).
For the foregoing reasons, we affirm the defendant's sentences and convictions.
AFFIRMED.