759 So.2d 773 (1999)
STATE of Louisiana
v.
Princess P. LaCAZE.
No. CR99-728.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1999.
*775 Van Kyzar, Dist. Atty., for State of Louisiana.
Timothy Allison Meche, New Orleans, LA, for Princess P. LaCaze.
Court composed of Chief Judge NED E. DOUCET, Jr., Judge MARC T. AMY, Judge GLENN B. GREMILLION.
AMY, Judge.
The defendant was convicted of second degree murder in the shooting death of her husband. She was subsequently sentenced to life imprisonment without the possibility of probation, parole, or suspension of sentence. The defendant appeals the conviction, assigning various errors. For the following reasons, we affirm.

Factual and Procedural Background
This matter stems from the murder of Michael LaCaze on March 1, 1997. The record indicates that Mr. LaCaze was killed at his home in Natchitoches Parish, Louisiana, when Meryland Robinson entered the LaCaze home and shot him. The scene was made to look as if a robbery had occurred. The defendant, Princess LaCaze, the victim's wife, returned to the couple's home later in the evening, found her husband, and placed a call to 911.
Although the defendant's initial statement to the police indicates that she denied any knowledge regarding her husband's death, a statement given on September 12, 1997, includes an assertion that her husband may have arranged his own death due to serious health problems. In December 1997, the defendant gave another statement indicating that she knew that Robinson was going to kill her husband on the *776 day of his death. However, her statement reveals that she believed that her husband sought Robinson's assistance in ending his life due to his declining health. The defendant admitted to having an extramarital relationship with Robinson at the time of her husband's death and that, on the day of the murder, she called Robinson who informed her that "it would be taken care of that day." The defendant stated that Robinson told her not to return home until seven o'clock that evening.
Robinson was arrested in December 1997 and testimony presented at the defendant's trial demonstrates that he initially denied that the defendant was involved in Mr. LaCaze's death. Both Robinson and the defendant were indicted, in January 1998, for second degree murder, a violation of La.R.S. 14:30.1. They were subsequently re-indicted for the same charge on May 20, 1998. The record reveals that, while released on bond, Robinson was arrested after the defendant informed authorities that he was knocking on the wall of her home. In a recorded statement given on May 16, 1998, Robinson confessed to shooting Mr. LaCaze, but informed the authorities that the defendant had helped plan the murder. Subsequently, Robinson entered a plea of guilty to manslaughter and received a forty-year sentence.
At the defendant's trial, Robinson testified for the State explaining that he had a friendship and working relationship with Mr. LaCaze, but that he and the defendant became involved and, at her urging, he agreed to kill Mr. LaCaze. The defendant testified on her own behalf at trial and stated that Mr. LaCaze wanted his life to end and that she knew Robinson was going to kill him. However, she denied asking Robinson to perform the shooting. A jury found the defendant guilty. She was subsequently sentenced to life imprisonment without the possibility of probation, parole, or suspension of sentence.
The defendant appeals her conviction arguing that: 1) The record is incomplete on appeal due to various untranscribed bench conferences; 2) The trial court made improper remarks to defense counsel during the course of the trial requiring reversal of the conviction; 3) The trial court erroneously denied her motion to dismiss a panel of prospective jurors following an off-record comment by the judge possibly overheard by the jurors; 4) Several challenges for cause were erroneously denied during voir dire examination; 5) The trial court erred in denying her motion to make back-strikes of jurors; 6) The request for individual sequestered voir dire was erroneously denied; 7) The defendant's motion for mistrial was erroneously denied following improper reference by the State to inculpatory statements that had not been adequately disclosed prior to trial; 8) The trial court erred in permitting the introduction of inculpatory statements that had not been found admissible and were not properly disclosed during discovery; 9) Evidence of other bad acts was impermissibly allowed by the trial court; 10) The State engaged in a pattern of prejudicial and inflammatory comments throughout the trial denying her a fair trial by an impartial jury; and 11) The trial court's instruction regarding the burden of proof permitted the jury to find her guilty even in the presence of reasonable doubt.[1]

Discussion

Assignments of Error 1-3
The defendant's first three assignments of error all pertain in some way to discussions, held at the bench, which are not contained in the record. First, the defense counsel argues that since he was not the defendant's counsel at trial, he cannot offer effective assistance on appeal without knowledge of pretrial hearings that were *777 not transcribed or discussions held at the bench during trial. The defendant contends that these bench conferences primarily dealt with issues arising from the voir dire process and from objections made throughout the trial. In particular, the defendant notes one bench conference wherein she alleged that the trial court threatened to hold defense counsel in contempt during the voir dire process. This statement was allegedly made within the hearing of potential jurors.
The defendant also alleges, in her second assignment of error, that the trial court made various improper comments to defense counsel during the voir dire process that adversely influenced and prejudiced the potential jurors. In particular, she notes several instances where the judge asked counsel such questions as, "would you please ask questions rather than preach to the prospective jurors" and "[i]f there's a question in there, let's get to it, please." The defendant asserts that these type of statements militate against an appearance of neutrality on the part of the judge. Further, the defendant points to the alleged unrecorded threat to hold defense counsel in contempt. Thus, the second assignment of error relates to the defendant's first, as well as the defendant's third assignment, wherein she alleges that the "vehement outburst and threat to hold defense counsel in contempt" occurred in front of a panel of prospective jurors and could have been overheard. As the abovediscussed assignments relate to one another and all address unrecorded bench conferences, we will address these discussions together.
A criminal defendant has "the right of judicial review based upon a complete record of all evidence upon which the judgment is based." La. Const. art. I, § 19. Furthermore, La.Code Crim.P. art. 843 provides:
In felony cases, and on motion of the court, the state, or the defendant in misdemeanor cases tried in a district, parish, or city court, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.
As explained by the Louisiana Supreme Court, convictions have previously been reversed in cases "when material portions of the transcript were either incomplete or unavailable." State v. Landry, 97-0499, p. 2 (La.6/29/99); 751 So.2d 214, 215. Further, "[a] criminal defendant has a right to a complete transcript of the trial proceedings, particularly where counsel on appeal was not counsel at trial." Id. at p. 3; 751 So.2d at 215.
However, reference to jurisprudential authority indicates that the need for recordation is not absolute. In State v. Clark, 93-903 (La.App. 3 Cir. 3/16/94); 638 So.2d 225, a defendant sought reversal of his conviction as legal objections of counsel and related argument which were heard at the bench were not transcribed. A panel of this court concluded that the absence of a recording of these discussions, alone, was not sufficient for reversal. The court stated:
First, we find defendant's reliance on [State v.] LeBlanc, [367 So.2d 335 (La. 1979),] misplaced. While LeBlanc does discuss a defendant's constitutional right to judicial review based upon a complete record of all evidence upon which a judgment is based, LSA-Const. Art. 1, sec. 19, it does not require the argument of counsel to be recorded. See State v. Johnson, 438 So.2d 1091 (La.1983), where the missing portion of the transcript consisted not of testimony, but of the argument of counsel. Johnson found such argument to be immaterial to an adequate review of the trial court's ruling.
Secondly, State v. Richardson, 529 So.2d 1301 (La.App. 3 Cir.1988), writ denied, 538 So.2d 587 (La.1989), presented *778 almost exactly the same factual situation as the case sub judice. In finding Article 843 did not require reversal, the court stated:
"The defense counsel stated his objection and the basis therefor prior to approaching the bench ... On appeal, we can easily review the correctness of the rulings on each objection as the basis for the objection is on the record and the Trial Judge's ruling on each is stated. Hence, we feel that the missing arguments of counsel are an inconsequential omission, immaterial to a proper determination of the appeal. Also, defendant's trial counsel who made the objections certainly has knowledge of his own arguments made at the bench in support of his objections. The failure to record the arguments of counsel at the bench conference in no way interfered with or prejudiced the defendant's right to appeal."

Richardson, supra, at p. 1308.
While defendant correctly points out some examples in the record where the grounds for the objections were not recorded, he has in no way shown how this has prejudiced him. None of defendant's assignments of error relate to an objection where this court cannot clearly ascertain from the record what took place in the courtroom. For these reasons, we find this assignment to be without merit.
Id. at p. 3-4; 227. Thus, Clark indicates that lack of recordation of arguments heard at the bench, alone, is not error. Rather, it is the court's ability to review and the demonstration of prejudice that are at issue.
Our review of the record and the defendant's argument do not indicate that she has shown that the lack of recordation of the bench conferences, in general, has prejudiced her. We reach this conclusion even in light of Landry, 97-0499; 751 So.2d 214, which, as explained above, demonstrates that a criminal defendant has a right to a complete transcript where his appellate counsel did not act as trial counsel. In Landry, however, a variety of problems existed with the transcript, some of which were apparently caused by excessive construction noise outside of the courtroom. The supreme court explained that its review of the record confirmed the defendant's assertion that, among other things, the record had unidentified or misidentified speakers, parts of the transcription were out of order, and different versions of the victim impact statement appeared in the record. The court specifically noted problems with the voir dire examination in that there was difficulty in determining whether defense counsel entered objections. Accordingly, the court reversed the defendant's conviction finding that the state of the record effectively deprived the defendant of his right of appeal and judicial review.
Our review of the record in the instant case indicates that the omissions are far less egregious than those at issue in Landry. We note that the questioning of the witnesses during the voir dire examination is complete, it is only the bench conferences that are not transcribed. Generally, the basis for holding each of the bench conferences is discernable. Thus, we do not conclude that the record, in this case, is so deficient as to deprive the defendant of her constitutional right to appeal.
We separately consider the specific instance regarding the unrecorded contempt warning allegedly overheard during the voir dire process by prospective jurors. According to the defendant, this incident is demonstrative of remarks and comments made by the trial court during the voir dire process that hampered defense counsel's representation.
Although the bench conference containing the specific "outburst" complained of by the defendant is not recorded, the record contains the transcript of the arguments heard on the defendant's motion to strike the entire panel present at the time *779 of the remarks. The transcript indicates that the discussion, which was held outside of the presence of any jurors, included the following colloquy between the defendant's trial counsel and the trial court:
MR. TOWNSEND: Your Honor, the motion I wanted to make is and I thought it was an appropriate time, I move to make ... I ask the Court for leave of Court to make a motion outside the presence of the jury which was denied. Your Honor, asked me the nature of it and I explained on the record the nature of it was whether it was inadvertent or not on part of, Your Honor, there were comments made towards me and the matter in which I was conducting voir dire. Which could cause a striking at my client over my shoulder. I think that's inherently unfair. I think it's highly prejudicial. And I think that it has the propensity to taint the entire jury pool. This Court, Your Honor, has been a Judge in this court for a number of years before retiring. And you carry certain weight with that office and you carry certain respect with that office and when this Court acts in the manner in which it did towards me, who at a time when I'm given wide latitude under the law to conduct voir dire examination, I think that it's inherently unfair to my client ... In addition, and the purpose of the motion was in the event that it was inadvertent on part of this Court, to bring to the Court's attention that this is the 3rd time during my attempt to conduct voir dire, understanding the wide latitude that I've got, that I was interrupted by the Court. Only once has Mr. Kyzar objected. The second interruption by the Court the lady looked up and says, I've answered the question. There was a question, when I was questioning Mr. Hammons. Sometimes one factor alone does not make one an unfair or impartial juror, but when you take a collective number of factors that might influence that juror to the point that would create, under our law, the granting or at least the consideration of a challenge for cause. Now, Judge, this is hard for me to do. I hope that, Your Honor, you will hold it against me and not against my client. I didn't want to go further. I wanted to make that motion and I was advised by the Court that I would be held in contempt and placed in jail. And I seriously argued to the Court that I didn't want to go further at that time. This is about the one trial for Princess LaCaze. And I think the remarks made by this Court were improper and inherently unfair to her receiving a fair trial. Thank You.
THE COURT: The purpose of voir dire examination of prospective jurors is to illicit information from them so, as to acquire the information needed to assess their qualifications. What you were doing for the most part of your voir dire examination was preaching to the jury. You were repetitious. You were asking the same questions worded slightly differently, perhaps, at times, but you were asking the same questions over and over and over and you were arguing your case to them. It was at the point that you were arguing to the jurors that I asked you if there was a question somewhere in that argument. If you took my suggestion other than what it was suppose to mean and that was to get to the point and let's get to the qualification of the jury, then that's a difference of opinion between what I thought I was doing and what you thought I was doing. Your objection is otherwise noted for the record, made a part of these proceedings. I would state for the record though, since you wanted to dismiss all of the four or five jurors or potential jurors, who were in the jurybox, that what conversation we had was at a sidebar, it was quiet. It was not heard by the jurors. And I'm firmly convinced that no prejudice was observed by these jurors in that regard.
. . . .
MR. TOWNSEND: Your Honor, in addition to the motions that I previously *780 made, and for the same reasons that I have previously given, particularly, that I felt the remarks made were in hearing distance of the Court, excuse me, the remarks made by the Court were in hearing distance of the prospective jury members and that ... I can't estimate the feet, but maybe twenty (20) feet or so. And that the remarks that I previously stated in my previous argument that the Court made were in hearing distance of the prospective jurors and could be prejudicial to and would be prejudicial to Ms. LaCaze and on that basis I would move for a mistrial.
THE COURT: Motion denied. Bring the jury in please.
If a trial court's disparaging remarks or intemperate criticism of defense counsel adversely influence and prejudice the jury against the defendant, these comments may constitute reversible error. State v. Hubbard, 97-916 (La.App. 5 Cir. 1/27/98); 708 So.2d 1099, writ denied, 98-0643 (La.8/28/98); 723 So.2d 415. However, unless the improper comments are of such a character as to influence the jury and contribute to the verdict, they do not constitute reversible error. Id. See also State v. Hamilton, 481 So.2d 135 (La.App. 2 Cir.1985).
The lack of a transcription of the bench conference at issue makes our review of the defendant's assertion difficult. We are left with the subsequent discussion following the motion to strike and motion for mistrial which contains the trial court's explanation of the event as well as its statement indicating that it did not believe that the prospective jurors could overhear any admonishment. However, there is another obstacle to our review of this matter in that the record does not indicate that any contemporaneous objection was made by the defendant at the time of the statements complained of. See La.Code Crim.P. art. 841.
In her brief to this court, the defendant contends that the bench conference in question occurred at page 359 of the record. However, before any objection was raised by defense counsel, several more voir dire bench conferences were held and several more jurors were selected. There is no indication that defense counsel objected at the time the remainder of the prospective jurors were released, but instead argued the motion to strike and motion for mistrial after the jury was selected and immediately prior to opening arguments. After the bench conference at which the comments were made, the trial court informed defense counsel only that: "I'll let you make that motion. You write it down and I'll let you make it after a while." There is no indication what "motion" the trial court was discussing, whether a motion to strike or motion for mistrial. Even if a contemporaneous objection problem exists, and we do not conclude that it does, we find that the defendant failed to demonstrate that he was prejudiced by any comments made at the bench.

Assignment of Error 4
In her fourth assignment of error, the defendant contends that the trial court improperly denied her challenges for cause asserted against four venire members. The minutes reveal not only that the defendant exhausted her peremptory challenges during the jury selection process, but that two of the four venire members at issue were seated as jurors due to this expenditure.
When a defendant has used all available peremptory challenges, a trial court's erroneous ruling that deprives him of a peremptory challenge constitutes a substantial violation of his La. Const. art. I, § 17 guarantee to a full voir dire examination of prospective jurors with the ability to challenge jurors peremptorily. State v. Cross, 93-1189 (La.6/30/95); 658 So.2d 683. To demonstrate reversible error, a defendant must show both an erroneous denial of a challenge for cause and that all available peremptory challenges were used. Id. As stated above, all peremptory challenges available to the defendant in *781 the instant matter were used. Therefore, we turn to consideration of whether denial of the challenges for cause was erroneous. In our review, we are mindful that the trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when review of the entire voir dire reveals an abuse of discretion. State v. Turner, 96-845 (La. App. 3 Cir. 3/5/97); 692 So.2d 612, writ denied, 97-2761 (La.2/20/98); 709 So.2d 773.

Venire Member Gay
The defendant first addresses venire member Mervin Gay, Jr., an actively employed jailer. Further, because of his duties as a jailer, Gay had met Robinson and also knew detectives connected with the case. However, Gay stated on the record that he could be impartial. After the defendant's challenge for cause was denied, she exercised a peremptory challenge. In her brief to this court, the defendant references jurisprudence indicating that active-duty law enforcement personnel should normally be excused from jury duty in criminal cases. Further, she contends that the failure to excuse the jailer was also problematic due to Gay's acquaintance with some of the participants in the trial.
The defendant correctly points out that an active-duty law enforcement officer has been historically viewed as incompetent to sit on a criminal jury. See State v. Simmons, 390 So.2d 1317 (La. 1980) (wherein the Louisiana Supreme Court determined that a law enforcement officer is disqualified even if the officer testifies as to his or her ability to render an impartial verdict); State v. Brown, 97-1531 (La.App. 3 Cir. 6/10/98); 715 So.2d 566, writ denied, 98-1790 (La.9/23/98); 724 So.2d 773; State v. Fox, 96-0754 (La.App. 4 Cir. 2/26/97); 690 So.2d 246. However, in the recent case of State v. Ballard, 98-2198, p. 5 (La.10/19/99); 747 So.2d 1077, 1080, the Louisiana Supreme Court overruled Simmons and its progeny "insofar as they hold that a law enforcement officer is not a competent criminal juror." Writing for the majority, Justice Traylor explained:
The disqualification of all law enforcement officers from service on a jury disregards whether or not the judge, whose rulings on challenges for cause are given great deference in all other instances, accepts the officer as a fair and impartial juror. We find that such a disqualification amounts to an irrebuttable presumption of untrustworthiness in law enforcement officers and is an affront to police officers in this state....
Moreover, by painting with such a broad brush, Simmons fails to discuss the application of other protections that were enacted to ensure a fair trial. Specifically, the legislature enacted La.Code Crim. Proc. art. 797 to enumerate grounds by which a juror may be removed for cause, providing lack of impartiality and employment relationship as two possible grounds for removal among many. These provisions allow the trial judge, who is in the most favorable position to determine whether a prospective juror can serve impartially, to make such an examination on a case-by-case basis while avoiding the broadly written rule set forth in Simmons.

We find the protections of La.Code Crim. Proc. art. 797 sufficiently assure that a defendant is tried by a fair and impartial jury. In this case, Officer Schultz testified that he felt his connection with law enforcement officers would not affect his ability to serve as a fair and impartial juror. Furthermore, with regard to the colloquy between the defendant's attorney and Officer Schultz, it is difficult to say, without being able to observe his tone and inflection, whether Schultz's response indicates that he aggressively seeks out all D.W.I. cases, or whether his line of work does not result in many opportunities to "work D.W.I.'s". The trial judge was in the best position to study Schultz's demeanor to determine his candor. *782 Therefore, we defer to the trial judge's discretion in denying the defendant's challenge for cause.
Id. at p. 4, 390 So.2d at 1080; (footnote omitted). As the supreme court has determined that a law enforcement officer is not, per se, incompetent, we need not reach the issue of whether a jailer is considered such an officer, but, instead, turn to the questioning of the prospective juror to determine whether the trial court abused its discretion in denying the challenge for cause.
The voir dire transcript reveals that Gay testified that he had only casual contact with the detectives involved in the case and that there was nothing about his working relationship with anyone at the sheriff's department that would prevent him from acting as a fair and impartial juror. He also revealed that he had not spoken with Robinson regarding the case and that nothing about this contact would make it difficult for him to serve as a juror. Based upon these responses, we find no abuse of discretion in the trial court's denial of the defendant's challenge for cause.

Venire Member Keator
The defendant also contends that the trial court erroneously denied her challenge for cause as to Marion Keator, due to alleged difficulties with the presumption of innocence. As the defendant had exhausted her peremptory challenges, Keator was seated on the jury. Although Keator expressed reservations about concepts of burden of proof and specific intent, she indicated that she would be able to follow the law as instructed by the trial court. Thus, she was sufficiently rehabilitated to properly serve on the jury.
In support of her argument, the defendant cites Turner, 96-845; 692 So.2d 612, wherein a panel of this court determined that a prospective juror who expressed personal reservations regarding the State's burden of proof should have been removed for cause. However, the instant matter is distinguishable. In Turner, the juror answered in the affirmative to the trial court's questions, but at the end of the questioning testified that she "still [believed defendant] should have to ... as long as the State has to prove that he is guilty ... he should have to prove that he is innocent." Id. at p. 7; 616. Here, Keator indicated that even though she was beginning to have "philosophy questions" regarding the burden of proof, she testified that she could "follow the letter of the law, put aside feelings." Thus, Keator was sufficiently rehabilitated.

Venire Member McClain
The defendant contends that the trial court also erred in denying the challenge for cause to the seating of Victor McClain. McClain stated during voir dire that he had negative feelings about adultery and was ultimately removed by the defendant's use of a peremptive challenge. Our review of the transcript reveals that, while true that he stated he opposed adultery, he testified that he would be able to differentiate it from the separate act of murder. He stated that "she's being tried for murder, not adultery." Furthermore, the trial court questioned McClain as follows:
Q. Can you give me your assurance that you will give Princess LaCaze the benefit of the doubt that says she is innocent until proven guilty beyond a reasonable doubt?
A. Yes, sir.
Q. How much influence does your feeling about adultery have on you right now as you sit here?
A. Well, you can commit adultery and you can repent and be forgiven. Murder is a little bit different matter. It's kind of rough for the person that was shot. Based on the witnesses, if I think that she was in collusion with the man that [sic] who's in prison I'll say guilty. If I think he went out on his own and did this crime, I'll say not guilty.
We conclude that this colloquy adequately establishes that the trial court did not err in denying the challenge for cause.

*783 Venire Member Wade

Finally, the defendant contests the trial court's denial of her challenge for cause to Rodney Wade. Wade testified that he knew Robinson, the victim, and both the victim's son and his parents. The defendant argues in her brief to this court that these "social entanglements" must have affected the juror's impartiality.
Our review of the voir dire transcript indicates that the "relationships" complained of do not appear to be close ones. Rather, Wade stated that Robinson was a few years ahead of him in school and that he would see him from time to time. Wade also testified that he would occasionally speak to the victim when he saw him "at the store." Additionally, Wade repeatedly stated that he could be fair and impartial at trial. We conclude that this evidence substantiates that any relationship was limited and that Wade sufficiently informed the court that he could properly serve on the jury. Accordingly, we find no abuse in the trial court's denial of the challenge for cause.

Venire Member Hammons
In a footnote, the defendant claims that juror Douglas Hammons' seating is questionable because Hammons indicated difficulty understanding, or accepting, legal distinctions between knowledge of a crime and actual procurement of that crime. He also indicated that he knew many LaCazes in the area and this could be problematic in his role as a juror.
Our review of the transcript reveals that, after being informed by the State that the LaCazes whom Hammons knew were not related to Mike LaCaze, Hammons testified that his conscience was eased in that regard. Furthermore, with regard to the defendant's assertion that Hammons indicated difficulty differentiating between knowledge of a crime and procurement, we find no indication that the juror was ever challenged in this regard. The transcript reflects that, after a bench conference, the trial court ruled:
THE COURT: Okay. The preemptive challenge is for cause on the grounds of hardship. That is denied by the Court. The challenge is for cause because this guy has a relationship with the LaCazes. The Court has found that he's not familiar with which LaCaze belongs to which LaCaze. His relationship is so distant and so uncertain that I find that it's not one of those situations of the Code of Criminal Procedure which justifies the challenge for cause. It is therefore denied...
We find no basis in the record to believe that an additional challenge for cause was lodged against Hammons. Accordingly, we find no abuse of discretion in the trial court's determination.

Assignment of Error 5
In her fifth assignment of error, the defendant contends that the trial court erred in refusing to permit back-strikes of jurors. After one of the unrecorded bench conferences, the following colloquy reveals the court's ruling as follows:
THE COURT: I have checked the Code of Criminal Procedure and particularly articles having dealing [sic] with trial procedure and the selection of jury and the challenging of juries and everything. I can not find where it's mandatory that you be given a back strike. It's my opinion that once you choose or accept a juror that's ... that juror is there, unless you can show me something that says otherwise.
Our review of the record reveals that the defendant offered no objection to the trial court's ruling. See La.Code Crim.P. art. 841. Furthermore, there is no indication that either party actually attempted to exercise a back-strike. Accordingly, we find no merit in this assignment.

Assignment of Error 6
The defendant next contends that the trial court erred in denying her motion for individualized voir dire. The record indicates that the voir dire process in this case began as an individualized process as *784 the trial court had granted a Motion for Individual Voir Dire due to pre-trial publicity. After the first three venire members were questioned individually, however, there was no indication of taint from such publicity. The trial court then rescinded its earlier ruling and conducted the voir dire examination on a panel-by-panel basis. The defendant contends that the process should have remained individualized due to "sensitive issues concerning interracial adultery requiring careful and delicate probing of jurors on matters they might not feel comfortable discussing."
In State v. Copeland, 530 So.2d 526, 535 (La.1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989), the Louisiana Supreme Court explained:
There is no provision in our law which prohibits or requires the sequestration of prospective jurors for individual voir dire. State v. Comeaux, 514 So.2d 84, 88 (La.1987). The trial court has discretion to decide whether the jurors should be called singly or in groups. C.Cr.P. 784, Comment c. Without a showing of "special circumstance," the trial court does not err in refusing requests for individual voir dire. State v. Comeaux, supra. The fact that a case is a capital case does not in and of itself establish the existence of special circumstances. State v. Wingo, 457 So.2d 1159[,] 1165 (La.1984).
We conclude that the trial court was not required to find that "special circumstances" existed requiring individual voir dire. There is no showing that the defendant was affected in her attempt to question jurors regarding issues of race or marital fidelity.

Assignment of Error 7
In this assignment of error, the defendant alleges that the State improperly referenced inculpatory statements she made to the police and to witness Simon Sarpy. The defendant contends that "these statements had not previously been ruled admissible." The transcript reveals the State's opening statement was interrupted and defense counsel entered an objection as follows:
[Mr. Kyzar, Prosecutor] ... They questioned Mr. Sarpy at a later date and he divulged that information to them. But that's important, that's very important. But first, before we talk about that, I want to get to, probably, the next most important piece of evidence in this case, other than Mr. Robinson's testimony and that is, ladies and gentlemen, that you will hear her own words. You will hear her own words in a statement given to Victor Jones and Travis Trammel December 12th, 1997.
MR. TOWNSEND: Your Honor, let me just enter an objection. I don't want to interrupt him, but he's bordering on some things that you know about and I'd just let the objection be noted.
THE COURT: Let the objection be noted.
After the State finished its opening statement, the following discussion was held outside the presence of the jury:
THE COURT: Did you want to put on record your objection that you made quietly while he ... while the D.A. was making his opening statement?
MR. TOWNSEND: I did, Your Honor, I didn't want to interrupt Mr. Kyzar and I think what he did was a little more than allude to a statement that quite frankly, I'm not sure that's even been ruled upon yet. But I thought that ... he specifically ... my recall was referred to 12/12/97 statement and that's... that inculpatory statement/confession as they contended is something that would be inappropriate to refer to in opening statements by the prosecutor.
MR. KYZAR: Judge, the evidence code specifically allows reference to opening statements after a motion to suppress has been filed, and I think you've ruled on that ... that's admissible.
THE COURT: Yes, sir.

*785 MR. TOWNSEND: I didn't know that you've ruled, Judge. I never got ...
MR. KYZAR: I thought you ruled in Open Court.
THE COURT: I've ruled on it. I don't know whether it's in Open Court, but there is a ruling on it. Anyway, let the objection be noted and made of the record...
The next day, and once again outside the presence of the jury, the defendant moved for a mistrial. The matter was discussed as follows:
MR. TOWNSEND: Your Honor, yesterday afternoon we made an objection to the comment made by Mr. Kyzar in his opening brief. When he referred specifically to the date 12/12/97 which was a date that Miss LaCaze made a statement and we made that objection and we tried not to interrupt his opening and let him continue with his continuity of his argument. But at this time we would move in connection with that in addition to our objection move for a mistrial based upon that statement which we deemed is inappropriate. He can allude to it but mention it directly, I think, maybe a little bit out of bounds.
MR. KYZAR: Your Honor, as I mentioned yesterday, the evidence code is specifically [sic] allows that under the circumstances and pray motion to be denied.
THE COURT: Let the objection be noted and made a part of the record and the motion of mistrial is denied ...
With regard to the defendant's statements to Sarpy, no objection was made to this statement. As can be seen from the above passages, defense counsel's focus was on the December 12, 1997 statement the defendant made to the police. In the written ruling following the defendant's pre-trial Motion in Limine, the trial court admitted "only those statements provided to the defense by the prosecutor." At the suppression hearing held on August 11, 1998, the district attorney stated that he had provided the defendant with the December 12, 1997 statement. There was no contradiction by the defendant. In fact, the December 12 statement was the subject of the suppression hearing. Further, the defendant's subsequent Motion in Limine, dated August 17, also acknowledged receipt of the December 12 statement. Given this information contained in the record, the defendant cannot claim to have not known the December 12 statement had been ruled admissible. Accordingly, the trial court was not required to grant the mistrial for reference to the statement. See La.Code Crim.P. art. 767.[2]
Regarding the Sarpy statement, the defendant alleges in brief that the State hid the existence of the oral statement. However, reference to the supplemental record of this matter indicates that the statement was discussed at the August 11, 1998 hearing held on the motion to discuss. The matter was discussed as part of trial counsel's Motion for Continuance, which was granted by the trial court. Thus, it is apparent that the defendant's trial counsel knew of the existence of the Sarpy statement prior to trial. Furthermore, as previously stated, this objection to this statement was not properly preserved at trial as the objection during opening argument was directed at the December 12 statement.
This assignment lacks merit.

Assignment of Error 8
Again, the defendant attacks the admission of her statements made to Sarpy, with whom she had a relationship following her husband's death. Sarpy testified as follows regarding his discussion with the defendant:

*786 A. We was [sic] coming from Rosepine but we was [sic], I'm going to say east of Leesville coming toward Natchitoches. We was talking and I think I'm pretty [sic] she was upset about something because she was saying that she hoped ... she wished the Natchitoches Parish Police Department ... Sheriff Department would leave her alone.
Q. Would you tell me in her exact words what ... tell the jury in her exact words what she told you?
A. You want me to say exactly what she said?
Q. I want you to say exactly what she said?
A. She made the comment that the [] gun was in the river.
Q. Okay. Did you ... how did you react to that?
A. And ... I sort of, you know, like[ ] paused a while and for whatever and then we talked a little bit more then she repeated the same statement again that the [] gun was in the river.
Q. Did you ... what was your reaction to that?
A. I really didn't think anything about, sir. I just figured that she was upset and she just made a comment that, that's what it was.
Q. When she said she wished the Sheriff's Office would leave her alon[e] did she say anything else about that?
MR. TOWNSEND: Your Honor, let me enter an objection and ask can we approach the bench?

BENCH CONFERENCE
While unclear what was discussed at the unrecorded bench conference, we observe that the record contains no contemporaneous objection to the testimony the defendant now puts at issue, i.e., that involving the gun in the river. Further, as explained above, the defendant knew before trial that Sarpy would testify about the statement she allegedly made to him.
The defendant also complains about Sarpy's testimony regarding a telephone call the defendant allegedly made to him wherein she asked if he "was going to be a friend or enemy." Again, the record reveals no contemporaneous objection and, again, trial counsel knew prior to trial that Sarpy was going to testify about statements the defendant had made to him. These complaints should not be brought for the first time on appeal.
This assignment lacks merit.

Assignment of Error 9
In this assignment of error, the defendant complains the trial court erred in allowing testimony from Robinson and Sarpy regarding their relationships with the defendant. She also points out that during the testimony of Detective Travis Trammil, Jr., he indicated that she had confessed that "one of her lovers" had killed her husband. She argues that reference to her sexual history was unduly prejudicial evidence of "other bad acts" under La.Code Crim.P. art. 404.[3] She alleges that "[i]t was clearly intended to induce the jury to convict [her] on the grounds she was a woman of loose morals."
Our review of this matter reveals that the testimony regarding her relationships *787 with the men was relevant. For instance, Sarpy's testimony explained how he came to hear the incriminating remarks from the defendant. Likewise, Robinson's testimony regarding his realization that the defendant and Sarpy were "involved" provided an explanatory backdrop to his testimony. It clarified for jurors a reason for Robinson to offer testimony against the defendant. Due to the relevant nature and probative value of the testimony, we find no error in its admission.
As for Detective Trammel's testimony, we observe that his reference to Robinson as one of the defendant's "lovers" had little relevance to the rest of his testimony. This, of course, differs from the relevance such a statement might have had in the context of Robinson's or Sarpy's testimony. However, due to the jurors knowledge of her relationships with the men, it cannot be said that this information unfairly influenced the jury's ultimate decision as to the defendant's guilt.

Assignment of Error 10
In this assignment, the defendant contends that "[t]he prosecutor, throughout his opening statement, questioning of witnesses and, particularly, closing argument, engaged in a pattern of improper commentary so extremely prejudicial and inflammatory that reversal is required." She concedes that no objection was entered as to the majority of these remarks, but contends that in particularly egregious situations, such remarks may be noticed without objection as they may constitute due process violations.
As for opening argument, the defendant directs our attention to reference to her inculpatory statements. As these have been addressed above, and we have found no error in those references, we do not address these statements again. The defendant also contends that throughout the questioning of witnesses at trial and its statements to the jury, the State "twisted" facts and improperly focused on the theme of immoral sex.
In State v. Byrne, 483 So.2d 564, 574-75 (La.1986), cert. denied, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986), a death penalty case wherein a prosecutor's remarks were at issue, the supreme court stated:
Lastly, during the sentencing stage the prosecutor restated the theme presented by the state throughout the trial: Byrne used Roberta Johnson in much the same manner as he did all of his female friends...
During closing argument, the prosecutor stressed Clements testimony and continued to reiterate the theme that Byrne merely used women; that he did not care about any woman, much less the victim...
. . . .
The prosecutor's description of the defendant's relationships with the victim as well as other women is a fair one supported by the evidence. This time there was no arguably exaggerated reference to it being "lifelong." Moreover, the calculated manner in which Byrne won the trust and companionship of Roberta is an integral circumstance of the offense committed by him. As to the evidence of Byrne's relationships with other women, evidence of such relationships did not introduce an arbitrary factor.... Evidence of the defendant's prior relationships was relevant to show character, just as it was relevant for the defendant to introduce the testimony of his parents to mitigate against the death penalty.
As to the argument which contrasted the victims innocence with the character of the defendant, this Court has recently determined that a prosecutor's contrasting of the victim's innocence with the brutal manner of her death was not improper. State v. Jones, 474 So.2d 919 (La.1985); Accord State v. Rault, 445 So.2d 1203 (La.1984), cert. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984). Similarly, the comments in the *788 instant case were not improper. Moreover, the evidence of the victim's innocence was already properly admitted, and the argument did not interject an arbitrary factor.
We conclude that the present matter is analogous since the State's comments complained of were based upon evidence properly admitted during the trial.
As for the defendant's contention that the State improperly vouched for its witnesses' credibility during argument, we conclude that this assertion lacks merit as well. Those statements complained of by the defendant relate to Robinson's testimony. During his closing, the district attorney stated that: "I've [seen] thousands and thousands of witnesses take this very chair and I've never seen anything like that in my life. I've never seen anybody pour the truth out from their soul like I saw him and you saw it too. And you saw the difference in him and you saw the difference in her."[4]
In State v. Weidert, 568 So.2d 1162, 1166 (La.App. 5 Cir.1990), the fifth circuit explained:
A prosecutor's statement of personal opinion regarding the defendant's guilt or credibility is generally considered error when the statement is made in such a manner that the jury might conclude that the prosecutor's opinion is based on evidence outside the record. However, an expression of the prosecutor's opinion based on evidence within the record is permissible. State v. Motton, 395 So.2d 1337 (La.1981), cert. den. 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981); State v. Smith, 461 So.2d 1155 (La.App. 3rd Cir.1984).
Our review of the comments in question reveals that the statements do not contain the type of personal knowledge requiring reversal. See State v. Floyd, 544 So.2d 616 (La.App. 3 Cir.1989).
However, even if we were to determine that the remarks were improper, reversal would not be warranted. According to Weidert, "[b]efore reversing on the basis of an improper remark during rebuttal argument, the reviewing court must be thoroughly convinced that the remark influenced the jury and contributed to its verdict." Id. (citation omitted). There is no indication that these remarks were the type that would unduly influence the jury.
This assignment lacks merit.

Assignment of Error 11
In her final assignment of error, the defendant contends that the trial court incorrectly charged the jury regarding the requisite burden of proof. The trial court told the jury: "If after you have considered the State's evidence and the law applicable, if there is a doubt in your mind as to the guilt of the accused, which doubt is based upon a reason or for which doubt you can express a reason, then you may find the defendant not guilty." (Emphasis added.) The defendant contends this language indicated to jurors they did not have to acquit her even if they had reasonable doubt as to her guilt.
In State v. Esponge, 593 So.2d 677, 680 (La.App. 1 Cir.1991), the first circuit explained that "[t]he ruling of the trial judge on an objection to a portion of his charge to the jury will not be disturbed unless the disputed portion, when considered in connection with the remainder of the charge, is shown to be both erroneous and prejudicial." (Citation omitted.)
Reference to the jury instructions as a whole in the instant matter indicates that they occupy approximately seven pages of the trial record. Several instructions regarding *789 the reasonable doubt standard were given to the jury. The jury was instructed, in part, as follows:
You are not to consider the indictment or the bill of information as evidence against the defendant. The mere filing of a bill of information creates no inference whatsoever that the defendant is guilty. The defendant, on the other hand, is presumed to be innocent until each element of the crime necessary to constitute her guilt is proven beyond a reasonable doubt. The defendant is not required to prove that she is innocent. Thus, the defendant begins the trial with a clean slate. The burden is upon the State to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, then you must find her not guilty. The presumption of innocence is another way of saying that a person is not guilty until proven otherwise beyond a reasonable doubt. A legal presumption relieves the person in whose favor it exists from the necessity of any proof whatsoever. Nevertheless, a presumption may be destroyed by evidence to the contrary. In other words, a defendant in this state need not prove her innocence. It is incumbent on the State to prove her guilt beyond a reasonable doubt and until so proven an innocent, excuse me, an accused is presumed to be innocent. Proof beyond a reasonable doubt is a phrase that is almost self-explanatory. Reasonable doubt does not mean all possible doubt, but means doubt based upon reason. If after you have considered the State's evidence and the law applicable, if there is a doubt in your mind as to the guilt of the accused, which doubt is based upon a reason or for which doubt you can express a reason, then you may find the defendant not guilty.
Viewing the instructions as a whole, we do not conclude that the trial court erroneously instructed the jury to the prejudice of the defendant. Accordingly, this assignment is without merit.

DECREE
For the foregoing reasons, the conviction of the defendant, Princess LaCaze, is affirmed.
AFFIRMED.
NOTES
[1] In addition to the errors alleged by the defendant, we have reviewed the record for errors patent on the face of the record. See La.Code Crim.P. art. 920. Our review reveals no such errors.
[2] La.Code Crim.P. art. 767 provides as follows:

The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant unless the statement has been previously ruled admissible in the case.
[3] La.Code Evid. art. 404(B) provides:

B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
[4] The defendant also points out two other statements made by the district attorney. They are as follows: "But I'll stack him up against any witness I have ever heard in my life because you heard the truth and you'll never hear the truth from her. You heard the truth."; "And a lawyer told me one time that the hardest defendant, the hardest witness in the world to cross-examine is the one that's telling the truth. You can't. Because when they tell the truth it's physical; it's obvious and it was yesterday and it is today."