# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 18-732

**STATE OF LOUISIANA**

**VERSUS**

**MARCUS DWAYNE PIPER**
**A/K/A MARCUS PIPER**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 331,035
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Candyce G. Perret, Judges.

**CONVICTIONS AFFIRMED; POSSESSION OF A FIREARM BY A FELON SENTENCE AFFIRMED; AGGRAVATED BATTERY SENTENCE AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**

**Hon. Phillip Terrell, Jr.**
**9th JDC District Attorney**
**Cheryl A. Carter**
**Assistant District Attorney**
**P. O. Box 7358**
**Alexandria, La 71306-7358**
**(318) 473-6650**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Marcus Dwayne Piper**

**EZELL, Judge.**

In October of 2016, the Rapides Parish District Attorney's Office charged Defendant Marcus Dwayne Piper with attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. On April 24, 2018, the court heard Defendant's motion to recuse via a judge ad hoc and denied it. The parties selected a jury on June 5, and 6. Said jury began hearing evidence on the latter date and found Defendant guilty of a lesser-included offense, aggravated battery, a violation of La.R.S. 14:34, and guilty as charged for the possession of a firearm offense. On June 25, the court sentenced him to ten years at hard labor for aggravated battery and twenty years for possession of a firearm by a convicted felon.

Defendant now seeks review by this court, assigning two errors.

## FACTS

Keyon Stanley was walking out of a store and talking on her cell phone when Defendant ran up to her and put a gun to her head. He wanted information on the whereabouts of her boyfriend. Defendant's brother Charles approached and hit the top of her head, then Defendant hit her in the face with a gun. Defendant's brother stepped back and fired his weapon, but no shots hit the victim. The brothers got in a car and left the scene. Defendant had prior felony convictions.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent and the court minutes of sentencing require correction.

First, the sentencing judge imposed both sentences without the benefit of parole, which is required for Defendant's conviction of possession of a firearm by a convicted felon, but this restriction may only be imposed for aggravated battery if the offender knew or should have known that the victim is an active member of the United States Armed Forces or is a disabled veteran and the aggravated battery was committed because of that status. Louisiana Revised Statutes 14:34(B) requires at least one year of the sentence be imposed without benefit of parole, probation, or suspension of sentence if the above "status" requirement applies. There was no reference by the sentencing judge to this provision, nor indication in the record that this "status" provision was applicable to Defendant's case. Accordingly, we find Defendant's aggravated battery sentence should be amended to delete the denial of parole eligibility. The trial court is instructed to make an entry in the court minutes reflecting this amendment.

Next, the sentencing minutes indicate Defendant was ordered to pay court costs of $495.00 due June 25, 2018, and in default thereof, he was to serve ninety days in the parish jail. However, the sentencing transcript does not indicate the court imposed the payment of court costs or default time.[1] "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, we order the trial court to correct the court minutes of sentencing to strike the order to pay court costs and to serve jail time in default thereof.

---

[1] If convicted, a defendant is liable for all costs of the prosecution whether or not costs are assessed by the court. However, a district judge is authorized to suspend court costs. La.Code Crim.P. art. 887.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues the judge ad hoc erred by denying his motion to recuse the trial judge.

During the recusal hearing, Defendant's trial attorney testified regarding the circumstances that led to the recusal motion:

A. He was first on the docket. He's charged with felon with a firearm and attempted murder. An offer of, uh, fifteen years had been tendered by the District Attorney. At some point during the day, he indicated that he wanted to go to trial and not take the plea. Um, I'm, I'm assuming the part y'all are talking about. I went into the courtroom, I said, uh, I may have told Ms. Carter we need to bind him over for trial, um, I recall the Judge saying, um, that's good or that'll -- tell your client that'll make our, my day. Something of that -- I don't know verbatim -- but something of that nature. Uh (interrupted)

Q. So you're testifying that your, your client declined the offer, the plea offer from the State?

A. He did.

Q. Okay. And did you inform the Judge that he declined the plea offer?

A. I think I may have just said we need to bind him over which would have indicated yes, that the plea offer was rejected.

Q. Okay. And specifically what was her response to that?

A. I thought she said tell your client he'll -- that will make our day or that will make my day. That's what I thought. It may have (interrupted)

Q. Can you recall specifically at this time?

A. No. I, I would not be able -- I mean, the tape is -- what, what it says is what it says. I -- that's what I recall.

Q. Whatever statements, um, that were made at that time -- whatever her response was what did you do after she made that response?

A. I probably said, you know, um, that's scary or maybe that -- I don't know what -- I may have said that may be grounds for recusal right at that moment. I don't know. I -- the, the tape is -- well, the

3

tape is the tape. Um, I, I -- my recollection was -- it and I'm not -- I can't – it'd be – I'd speculate if I -- what her thought was -- I don't know. Okay. I can't – I'm not gonna speculate.

Q. What, whatever your -- her statements were, um, was it the grounds for your motion for recusal?

A.    Yes. Yes, but I'm not gonna speculate as to what she meant or thought. I'm just gonna tell you that's what I heard and that's what I, I felt like it -- that I could, um, ask for a recusal.

Q.    Um, did you make an oral motion?

A.    Um, it, it, yeah, it was a -- I announced in open Court that I was going to file a recusal, uh, be seeking a recusal and, in fact, within thirty minutes fil [sic] -- it was late in the day. It was probably three when, when all this was said so, um (interrupted)

Q.    And did you tell her on what grounds?

A.    I, I think I did. Uh, I know better -- I'm not gonna tell you what she told me. That would be hearsay but, you know, she (interrupted)

Q.    Okay.

A.    -- yeah, she knew that I was going to seek a recusal.

Q.    Were there any other statements in relation to Mr. Piper's case that was [sic] made by Judge Doggett?

A.    Um, no, no, not, not on the record. I don't recall any other, uh, anything else.

Q.    Any statements made off the record?

A.    Um, we may have briefly spoken about his criminal history. Uh, the exposure component of, of the, the, uh, the plea. In other words, customarily when someone comes forth to bind a trial -- to say I'm going to trial, the Judge will explain their exposure, and she did say this -- you're, you know, you have this many prior felonies. This would be your exposure on this, these, these particular crimes. Armed -- uh, felon with a firearm and attempted murder.

Q.    And she did that?

A.    She did do that.

Q.    Prior to her advising Mr. Piper of his exposure, did she make any statements concerning whether or not she would advise him?

A.    Um, not that I -- I mean, she may have said I'm tempted not to -- I don't know. I don't, I don't recall.

Q.    Do you recall if there was a statement made at all?

A.    She may have said I'm tempted not to advise him of, of his exposure but when he got up there she advised him of his exposure and believe, I believe she said I don't know anything about your case, but here's -- this is your situation.

BY MS. RATLIFF:

I have no further questions for Mr. Smith.

BY THE COURT:

Ms. Carter?

BY MS. CARTER:

I have no questions.

BY MR. SMITH:

Done?

BY THE COURT:

Mr. Smith, I'm not clear about, um, if Judge Doggett made any statements that formed the basis of your motion that were made off the record.

BY MR. SMITH:

Well, my memory is so -- I, I don't , I, I mean, I don't know what was said off the rec -- I don't -- I'm not comfortable saying something that was said off the record because it may not be verbatim of what we said or it may have been something that I assumed that -- in other words, the stuff on the record you can hear what was said and, and whatever it is, it is but off the record -- I'm just not comfortable saying because I, I may be inaccurate. My, my memory is not -- I don't want to say something from the perspective that I took that may not -- you understand? It's not verbatim and I don't, I don't -- I'm not comfortable saying that.

5

BY THE COURT:

Okay.

As Defendant observes, La.Code Crim.P. art 671 states, in pertinent part:

A.    In a criminal case a judge of any court, trial or appellate, shall be recused when he:

(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
. . . .

(6) Would be unable, for any other reason, to conduct a fair and impartial trial.

The ad hoc judge heard testimony from several other witnesses. Although their recollections of the trial judge's statement varied somewhat, all recalled that the judge expressed some pleasure that the case was going to trial. The judge ad hoc listened to the relevant audio recording. We note the remarks at issue do not appear in the transcript designated Piper-1, as they were not originally part of the record. Apparently, the court reporter had continued to record even though the discussion was off the record. The recording reflected that, upon learning that Defendant's case would go to trial, the trial judge stated, "I'm thrilled . . . Tell him I appreciate it."

At the close of the recusal hearing the ad hoc judge stated:

> The testimony, uh, today reflected several comments, uh, made on and off the record, uh, some of which were, uh, in the presence of the defendant and may be some that were made, um, outside the presence of the defendant but nevertheless, uh, were made, uh, in regards to Mr. Marcus Piper and, uh, the matter that was pending before the Court. Judge Doggett made comments such as, um, tell your client you've made my day. The Court listened to the audio recording. Ms. Hale testified that, uh, her general practice is to leave the recorder on, um, whether on the record or off except in those instances in which, um, there are explicit instructions from the Court, um, not to record and, and that, uh, they're off the record or in off the

record situations that, uh, go on for some period, clearly trying to, um, conserve, uh, what, what's, uh, what's on the audio. But what was clearly heard is, uh, Judge Doggett making a comment about I'm thrilled. I appreciate it. The Court also heard her make a comment which, um, must have been in connection with other testimony, uh, that she said I'm not going to bring it up, um, which I understood was, uh, to advise Mr. Piper when he declined the plea about what his exposure was. The Court also heard, um, her statements then advising Mr. Piper as to, um, what the sentencing ranges were for, uh, the two counts that, uh, have been brought against him.

Based upon, um, the comments of tell your client or something to the effect that that makes my day, that I'm thrilled, I appreciate it, those remarks I rather suspect had Judge Doggett been called to testify she would say that, um, she now, um, would not make those kind of comments that, uh, they were regrettable. But in the view of this Court, the guilt or innocence of Mr. Piper was not going to be determined by Judge Doggett but by the jury. Um, the defendant had exercised his constitutional right, uh, to a, uh, trial by, uh, his peers, uh, from this community.

Cases, uh, of similar fact scenarios for recusal in which, uh, the trial judge has made some comments, uh, regarding, um, either guilt or innocence or, um, things of that nature, um, case law simply says that they're just kind of reactions of a judge but they don't really rise to the level of, uh, substantial in nature that, uh, triggers, um, 671A(1), um, and merits the recusal of a judge and so based upon, uh, the jurisprudence that, uh, I've, uh, have been able to find and considering, um, the comment, while best not said, um, I do not find that they are of a substantial nature that rise to the level, um, to form the basis of bias and prejudice and would, uh, result in the recusal of, uh, Judge Doggett. Those are the, uh, reasons of the Court in this matter. Ms. Ratliff?

BY MS. RATLIFF:

Judge, I'm sorry. I -- did you say denied the motion (interrupted)

BY THE COURT:

Yes, I was just giving you the opportunity to, um, make any objections to the ruling of the Court for the benefit of the record.

Defendant acknowledges that the trial judge's remarks were made outside the presence of the jury and "no adverse rulings can be found in the record." Thus, both Defendant and the State cite *State v. Willis*, 05-218 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, *writ denied*, 06-186 (La. 6/23/06), 930 So.2d 973, *cert, denied*, 549 U.S. 1052, 127 S.Ct. 668 (2006), as indicating that no error occurred.

However, Defendant argues the remarks created the appearance of impropriety and thus should have supported recusal. He cites no legal authority for this assertion, while having acknowledged the efficacy of *Willis*. Regarding possible impropriety, we note a recent discussion by the supreme court:

> In evaluating the state court judgment in **Rippo** [**v. Baker**, ___ U.S. ___, 137 S.Ct. 905, (2017)], the Supreme Court held that evidence of actual bias is not necessary to require recusal. See **id.**, 137 S.Ct. at 907 (citing **Aetna Life Ins. Co. v. Lavoie**, 475 U.S. 813, 825, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) ). The Court clarified that the inquiry for judicial disqualification is instead whether, "objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable'" under the circumstances. **Id.** (quoting **Withrow [v. Larkin**,] 421 U.S. [35,]at 47, 95 S.Ct. 1456) [(1975)]); see **Caperton v. A.T. Massey Coal Co., Inc.**, 556 U.S. 868, 889-90, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009). In applying this standard, the court must determine "whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." **Rippo**, 137 S.Ct. at 907 (quoting **Williams v. Pennsylvania**, ___ U.S. ___, 136 S.Ct. 1899, 1905, 195 L.Ed.2d 132 (2016) ). . . .
>
> . . . .
>
> Notably, La. Code of Judicial Conduct, Canon 2 requires that: "A Judge . . . Avoid Impropriety and the Appearance of Impropriety in All Activities," and La. C.Cr.P. art. 671, which lists the grounds for recusal, requires recusal if a judge is a witness in the cause and underscores the duty to avoid even the appearance of impropriety. See **State v. LeBlanc**, 367 So.2d 335, 341 (La. 1979) ("[T]he appearance of impartiality, as well as impartiality itself, outweighs the inconvenience caused by the recusal of the trial judge."
>
> Even if Defendant has identified a potential violation of state law or the judicial canons in Judge Marullo's failure to disclose, such a violation is alone insufficient to warrant a new trial in this case.

8

Similarly, as indicated in **Caperton,** circumstances that run afoul of state law or judicial canons do not necessarily violate federal due process, which is the issue currently before this court. Nonetheless, state law or judicial canon considerations may be relevant to the determination of whether Judge Marullo is subject to disqualification under the **Rippo** standard.

A judicial disqualification under the Due Process Clause first requires that an objective "probability of actual bias" be established. Thus, the state correctly notes that proof of an appearance of bias alone is insufficient to show a violation of federal due process. The Rippo standard clearly requires proof that an appearance of bias gives rise to a "probability of actual bias," also referred to as a "risk of bias" or "potential for bias." See **Rippo**, 137 S.Ct. at 907. Secondly, the defendant must prove that the probability of actual bias rises to a level that "is too high to be constitutionally tolerable" under the circumstances. See *id*.

*State v. Lacaze*, 16-234, p. 11-14 (La. 3/13/18), 239 So.3d 807, 813-16, *cert. denied*, __ U.S. __, 139 S.Ct. 321 (2018) (footnotes omitted) (fourth and fifth alterations in original).

We find the remarks at issue do not signify any bias or even possible bias against Defendant. When confronted with the initial oral motion to recuse, the trial judge indicated she simply wanted to conduct a jury trial. Defendant briefly suggests the trial court may have had a problem with his criminal history. However, this assertion does not appear to be supported by trial counsel's testimony at the recusal hearing. In the absence of any showing of bias or potential for bias, the assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues his trial counsel was ineffective for failing to make several objections or motions during trial. Both parties agree that the test for ineffective assistance of counsel consists of two steps: first, whether counsel's performance was deficient, and second, did said deficiency

prejudice the defendant asserting the claim. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2025 (1984).

His first argument is that trial counsel should have stipulated that he was a previously convicted felon to prevent the State from showing this fact through evidence, including the use of a fingerprint expert. There is no merit to this argument; in a prosecution for possession of a firearm by a convicted felon, a defendant's stipulation on this issue will not prevent the State from introducing such evidence. *State v. Ball*, 99-428 (La. 11/30/99), 756 So.2d 275.[2]

Defendant's next argument is that trial counsel should have requested a mistrial when a police officer, Wade Bourgeois, testified that Defendant stated, "This is why we fucking hate cops. That is why you cops keep getting shot." As the State points out, trial counsel objected. We note that defense counsel objected before the officer actually quoted Defendant, thus, if the objection had been upheld, the statement at issue would not have been quoted in open court. However, the current brief contains no challenge to the court's ruling on the objection. Further, Defendant cites no law and makes no argument regarding why trial counsel should have moved for a mistrial rather than, or in addition to, attempt to keep the evidence out via objection. We determine this argument should be deferred to the post-conviction process, where Defendant can more fully develop his argument and the record, if necessary. The State implies that Defendant's tirade was admissible under exceptions to the hearsay rule; however, the issue raised by Defendant's trial counsel was whether the evidence at issue was relevant.

---

[2]*See also State v. Taylor*, 01-1638 (La. 1/14/03), 838 So.2d 729, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036 (2004).

Next, Defendant argues that trial counsel "opened up the door to" testimony by another police officer regarding testimony that Defendant was involved in other shootings or at least gun-related incidents on the day of the offense. The testimony at issue indicated that Defendant and an accomplice had shot at the victim's car while her boyfriend was using it before the offense at issue, that they had held guns to the boyfriend's head in a separate incident, and that they had fired shots in the neighborhood immediately after the instant offense.

The State claims the trial court made an earlier ruling that the incident of holding guns to the boyfriend's head would be admissible during an officer's testimony. However, the State does not cite to a record page number. We find the evidence of the surrounding gun-related incidents would have been admissible for the State to present a comprehensive narrative to the jury. The supreme court has stated:

> Generally, courts may not admit evidence of other crimes to show defendant is a man of bad character who has acted in conformity with his bad character. However, under La. C.E. art. 404(B)(1) evidence of other crimes, wrongs or acts may be introduced when it relates to conduct, formerly referred to as *res gestae*, that "constitutes an integral part of the act or transaction that is the subject of the present proceeding." *Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence "to insure that 'the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place' " *State v. Colomb*, 98-2813, p. 3 (La. 10/1/99), 747 So.2d 1074, 1076 (quoting *State v. Haarala*, 398 So.2d 1093, 1098 (La.1981)). The *res gestae* doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. *State v. Huizar*, 414 So.2d 741, 748 (La.1982); *State v. Kimble*, 407 So.2d

693, 698 (La.1981). In addition, as this court recently observed, integral act (*res gestae*) evidence in Louisiana incorporates a rule of narrative completeness without which the state's case would lose its "narrative momentum and cohesiveness, 'with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.'" *Colomb*, 747 So.2d at 1076 (quoting *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).

*Taylor*, 838 So.2d at 741-42.

Defendant was apparently looking for the victim's boyfriend when he confronted her. Therefore, the evidence relating to other incidents involving the boyfriend was admissible pursuant to *Taylor*. The testimony that Defendant and his brother discharged firearms in the neighborhood was also admissible under *Taylor*, since it happened so close in time to the offense against the victim and may have been intended to intimidate the boyfriend or his friends. Since this evidence was admissible, deficient performance should not be ascribed to trial counsel. Thus, this argument lacks merit.

For the reasons discussed, we find the bulk of this assignment of error lacks merit. This court elects to defer to the post-conviction process on the issue of whether counsel was ineffective for failing to move for a mistrial as opposed to objecting to the relevance of Defendant's angry remarks to police.

**CONCLUSION**

The convictions and sentences are hereby affirmed. Defendant's argument that counsel was ineffective for failing to move for a mistrial is deferred to the post-conviction process, where the record and the arguments may be more fully developed regarding this assertion.

Defendant's aggravated battery sentence is amended to delete the denial of parole eligibility, and the trial court is instructed to make an entry in the court

minutes reflecting this amendment. Additionally, the trial court is ordered to correct the court minutes of sentencing to strike the order to pay court costs and to serve jail time in default thereof.

**CONVICTIONS AFFIRMED; POSSESSION OF A FIREARM BY A FELON SENTENCE AFFIRMED; AGGRAVATED BATTERY SENTENCE AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**